# The New York and Chicago Grain and Stock Exchange

## *v.*

## William H. Gleason.

*Filed at Ottawa September 26, 1887.*

1. Taxation—*duty of corporation to list its property.* The law makes it the duty of a private corporation, by its "president, or proper agent or officer," to furnish the assessor a schedule of its property subject to taxation, under oath, when called on for that purpose by the assessor.

2. Same—*duty and powers of assessor, in the matter of assessment and valuation.* The law does not make it the duty of the assessor to examine a tax-payer under oath, as to his or its taxable property, upon his or its failure to make a schedule thereof. Where a schedule has been presented to the assessor, duly verified by the person listing the property, if the assessor shall be of opinion that the person listing property for himself or for another person, company or corporation, has not made a full and fair schedule of such property, he may examine such person under oath, in regard to the property he is required to schedule.

3. The duty cast upon the assessor, by law, to assess the property within his town at its fair cash value, is entirely independent of anything the property owner may or may not do.

4. The fact that an assessor is told, when he calls on a corporation for a schedule of its taxable property, that the corporation has no credits or cash capital, and that its only personal property is its office furniture and fixtures, is not such notice as takes from the assessor the power or relieves him from the duty, in cases where no sworn schedule is presented to him, of listing and assessing the property of the corporation "according to his best judgment and information."

5. An assessor notified a corporation that he had valued its taxable property at $10,000, and that if this was not satisfactory, to call and schedule the same within one day. The corporation sent its agent, who did not furnish a schedule, but signed a petition to the town board of review, praying for a review and reduction of the assessment, which board reduced the assessment to $5000. No application was made to the county board for any further reduction: *Held*, that there was no fraudulent assessment, even if the assessor did promise to reduce the assessment.

6. Same—*over-assessment, or over-valuation—remedy.* If a party feels himself aggrieved by an over-assessment of his property for taxation, his remedy is by appeal to the township board of review, in the first instance, and if not satisfied with the action of that board, then by applying to the county board at its July meeting, whose power to correct assessments is

ample, and if he fails to avail of these remedies, he must bear the consequences of any over-valuation and assessment of his property. A court of equity can afford him no relief.

7. SAME—*when equity will enjoin.* The general doctrine of this court is, that a court of equity will not entertain a bill to restrain the collection of a tax, except in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, or where the property has been fraudulently assessed at too high a rate.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

Plaintiff in error is a corporation organized under the laws of this State, for the purpose of buying and selling grain, provisions and stocks on commission in Chicago, with a capital stock of $300,000, divided into three thousand shares. Its personal property was assessed by the assessor of the town of South Chicago, for 1885, at $10,000, and it was so notified by the assessor. It then petitioned the town board, complaining that the assessment was too high, stating in its petition that it was a corporation, but had no paid up capital; that it did a commission business, using its customers' money to margin all deals made for their account; that it had expended $1300 in furnishing and fitting its office, and stated that it should be assessed only on the value of its office fixtures, and prayed the review and correction of the assessment. Acting on the petition, the town board reviewed and reduced the assessment to $5000, which, however, was raised by the State Board of Equalization to $6000, upon which a tax of $322.62 was extended.

Plaintiff in error reported to the State Board of Equalization, as required by law, the amount of its capital stock, number of shares, capital stock paid up, value of its stock, etc., wherein it represented that no part of its capital stock had been paid up; that its stock had no value; that its indebtedness amounted to $25,000, occasioned by losses in business since May 1, 1885, and that the value of its tangible property

was $1300, and the State Board of Equalization assessed its stock and franchise at $7000, upon which a tax of $376.39 was extended.

After the tax warrant had come to the hands of defendant in error, as collector of taxes, plaintiff in error exhibited its bill in the Superior Court of Cook county against such collector, to enjoin the collection of such taxes.

The bill charges that the personal property of plaintiff in error was, by the town assessor, "arbitrarily and knowingly and fraudulently assessed" at five times its value. The facts disclosed as constituting the fraud, may be thus summarized : A deputy assessor called at the place of business of plaintiff in error for the purpose of making an assessment of its taxable property, and was then told that the corporation had no credits ; that it was doing only a commission business, and had no cash capital, and that the only personal property the corporation had was its office furniture and fixtures, that cost $1300, and that the deputy assessor listened to such statement without objection, and left; that after being notified by the assessor of his assessment at $10,000, it sent one of its officers to the assessor's office to protest against the assessment; that the officer went to the assessor's office and protested, in the form of a written statement upon a blank furnished to him by a person in the assessor's office, supposing such blank to be a mere form, and was there assured that the assessment would be adjusted according to such statement; that plaintiff in error relied on such assurance, and took no further care in reference to the matter, but at the time of filing the bill it learned that the blank on which the written statement was made, was, in fact, an application to the town board to review the assessment, and which the assessor himself presented to the town board, and, on his representation, the assessment, at $5000, was confirmed. Further, that plaintiff in error was always ready and willing to submit its affairs to examination by the assessor, or to answer

all questions touching its property, but the assessor made no inquiries of it as to its property, or notified it of his dissatisfaction with the statement that had been made to him concerning such property. The bill further charges, that when he made the assessment the assessor knew there was no other property for him to assess, except the office furniture and fixtures, the value of which he knew, from inspection; that in making his assessment, and his representations before the town board, the assessor claimed his assessment covered cash capital as well as office furniture and fixtures, and which claim was without evidence on which to rest, and was in opposition to the statement of plaintiff in error. The bill also charged that the action of the State Board of Equalization in raising the assessment on the personal property from $5000 to $6000, and also in assessing the stock and franchise of plaintiff in error at $7000, was fraudulent, in that it was made "arbitrarily, without a single fact or item of information as a basis," "in utter disregard of every circumstance which can tend to indicate the values of capital stock and corporate franchises," knowing the same to be "grossly excessive, unjust and unequal."

The answer expressly denied that the assessor, on receiving the complaint of too high assessment, promised to reduce the assessment according to the statement in the complaint, but refused to do so, and averred that the assessment was not alone upon the office furniture and fixtures, but also upon the amount of necessary money employed in the business of plaintiff in error; that the business of plaintiff in error was operating what is commonly called a "bucket shop," in Chicago, in buying and selling grain, produce, option deals, stock, etc., in which business it necessarily had on hand a considerable amount of money, and that it held itself out as financially solvent; that $5000 was a reasonable and lawful assessment of the value of the personal property of plaintiff in error, as deliberately judged by the town board of review.

It also denied that the assessor knew the only property of plaintiff in error was the office furniture and fixtures, and denied all fraud charged against the assessor, town board and State Board of Equalization. By stipulation, the cause was heard on bill, answer and affidavits, when the temporary injunction was dissolved and the bill dismissed.

Messrs. BISBEE, AHRENS & DECKER, for the plaintiff in error:

A court of equity will interfere to restrain the collection of a tax based upon a fraudulent over-assessment, considering a fraudulent over-assessment, independent of questions of irregularity, a sufficient ground for granting relief, and treating its jurisdiction as concurrent with the statutory remedies, through town or other boards. *Town of Lebanon* v. *Railroad Co.* 77 Ill. 539; *McBride* v. *City of Chicago,* 22 id. 574; *First National Bank* v. *Cook,* 77 id. 622; *Harward* v. *Drainage Co.* 51 id. 130; *Vieley* v. *Thompson,* 44 id. 9; *Lemont* v. *Stone Co.* 98 id. 94; *Insurance Co.* v. *Farwell,* 102 id. 413; *Railroad Co.* v. *Hodges,* 113 id. 323; *Felsenthal* v. *Johnson,* 104 id. 21; *Adsit* v. *Lieb,* 76 id. 198; *Pacific Hotel Co.* v. *Lieb,* 83 id. 602.

An assessment may be so grossly excessive as to imply fraud. *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602.

An assessment which is not based upon property known to exist, is not such an assessment as is contemplated by the Revenue law. Mere guess-work as to the existence of assessable property, is not a proper exercise of the official duty of the assessor, and if it turns out that no such property exists,— no subject matter of valuation,—injury is inflicted on the taxpayer, and so the assessment becomes fraudulent. See cases cited, and Const. of 1870, sec. 1, art. 9.

The personal property assessment in this case, under the principles above stated, was fraudulent.

The appellant was guilty of no negligence in reference to correcting the assessment by methods provided by law; and *quære,* whether appellant was required to go before the board

to correct a fraudulent assessment. If necessary, a sufficient presentation was made.

The action of the town board was no estoppel on appellant. The assessment remained fraudulent, notwithstanding the action of the town board. The bill, therefore, ought to have been sustained.

The assessment of the capital stock and franchises of the appellant corporation by the State Board of Equalization, had no basis of valuation. The board could not value the stock and franchises at $7000, by any known rule of assessment. Rev. Stat. chap. 120, secs. 33, 108.

It is not a mere valuation, but a palpable, fraudulent, over-valuation. *Porter* v. *Railroad Co.* 76 Ill. 561; *Life Ins. Co.* v. *Pollak,* 75 id. 292; *Glass Co.* v. *McCaleb,* 81 id. 556.

Mr. JOHN M. HAMILTON, for the defendant in error:

It was the duty of complainant, imposed by the statute, to schedule its property for assessment, and failing to do so, it was the duty of the assessor to assess it at such amount as he deemed proper, from such information as he could get.

The assessor having made the assessment, and notified complainants of the same, it was their right, under the statute, (Revenue act, sec. 86,) to apply to the town board for a review of the assessment. This they did. The town board reviewed and decided it. After that, the complainants might have applied to the county board for a review of the assessment, under section 97 of the Revenue act. This they failed to do, and they are bound by the action of the town board.

In the case of the New York and Chicago Grain and Stock Exchange, it made a report to the State Board of Equalization, as required by law, and when that board acted, it was bound by that action. "When the assessor and Board of Equalization have acted, their valuation can not be reviewed. It is conclusive, and the courts are powerless to hear evidence

to alter, or in anywise change, the valuation." *People* v. *Big Muddy Iron Co.* 89 Ill. 116.

The State Board of Equalization being composed of persons elected to assess and fix the value of such property as has been designated by law, their valuation is conclusive and final, and the courts can not examine the mode of reasoning or the basis adopted by them to ascertain the value of property. *Life Ins. Co.* v. *Pollak,* 75 Ill. 292.

A court of equity is not empowered to value property for taxation, but the boards of review afford ample remedy for all errors in valuation, and they must be resorted to for relief. *Railroad Co.* v. *Hodges,* 113 Ill. 323; *Preston* v. *Johnson,* 104 id. 625; *Felsenthal* v. *Johnson,* id. 21.

The case made on the bill, answer and affidavits, does not show a fraudulent assessment. *Darling* v. *Gunn,* 50 Ill. 424; *McConkey* v. *Smith,* 73 id. 313; *Cleghorn* v. *Postlewaite,* 43 id. 428; *National Bank* v. *Cook,* 77 id. 622; *People* v. *Ward,* 105 id. 620.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The bill in this case proceeds upon the theory that the property of plaintiff in error was fraudulently assessed for taxation at too high a valuation: The assessor, by his deputy, called upon plaintiff in error, at its place of business, for a schedule of its property subject to taxation. The law made it the duty of the "president, or proper agent or officer," of this corporation, to furnish to the assessor such schedule, (Revenue act, sec. 6, clause 8,) under oath. (Ibid. sec. 24.) There is no averment that the assessor said or did anything to induce plaintiff in error not to schedule, or to prevent it from scheduling, its property, and having the same verified by the oath of the proper officer of the corporation. (Revenue act, sec. 24.) The bill avers that the plaintiff in error was ready and willing to submit its affairs to examination by the

assessor, and to answer all his questions touching its property; but the law casts no such duty upon the assessor in cases where the property owner neglects to make the schedule required by law. When a schedule has been presented to the assessor, duly verified by the person listing the property, if "the assessor shall be of opinion that the person listing property for himself or for any other person, company or corporation, has not made a full, fair and complete schedule of such property, he *may* examine such person, under oath, in regard to the amount of the property he is required to schedule." (Revenue act, sec. 26.)    The law does not make it the duty of the assessor to enter upon such an inquiry in the first instance, or in any case, unless he doubts the correctness of the sworn schedule he is asked to accept.    The duty cast upon the assessor to assess the property within his town at its fair cash value, is entirely independent of anything the property owner may or may not do.

The bill further charges that the assessor knew, when he made the assessment, that, except the office furniture and fixtures, costing $1300,—the value of which he knew from inspection,—the plaintiff in error had no other property subject to taxation.    The cause was heard on the verified bill, read as an affidavit, and two affidavits,—one of Witherspoon, president, and the joint affidavit of Witherspoon and Skakel, an officer of the corporation.    And this was all the proof offered by plaintiff in error.    In the joint affidavit referred to, it was said, that on May 1, 1885, plaintiff in error "had no cash capital whatever, of which the said assessor, his deputies and said town board had notice."    And in the affidavit of Witherspoon it is said, that when the deputy assessor called at the place of business of plaintiff in error, he was told "that the corporation had no credits; that it was doing only a commission business, and had no cash capital, and that the only personal property the corporation had was its office furniture and fixtures," etc.    Is this such notice as takes from

the assessor the power, or relieves him from the duty, in cases where no sworn schedule is presented to him, of listing and assessing the property of the corporation "according to his best judgment and information?" And if he, nevertheless, in good faith, makes an assessment "according to his best judgment and information," (Revenue act, sec. 24,) is such assessment fraudulent if he makes a mistake and overvalues the property? Both inquiries must be answered in the negative. The circumstances were not such as to show bad faith on the part of the assessor, and we regard the reasons assigned by him, and by the town board, for disregarding such verbal, unsworn representations, and for assuming that, from the nature of its business, plaintiff in error had and used a reasonable amount of capital in its business, and that $5000, including the fair cash value of its furniture and fixtures, was a reasonable amount and valuation under the circumstances, as within the reasonable exercise of that judicial discretion vested in the assessor and the town board by the law.

It seems that after the assessor had acted in the premises, he sent the following notification to plaintiff in error, and which was duly received by the latter, viz:

"I have valued your personal property subject to assessment, at No. 140 Monroe street, which you are by law required to list, at the sum of $10,000. If not satisfactory, you will please call and schedule the same within one day.

FRANK DRAKE, *Assessor.*"

Plaintiff in error promptly sent its agent, Skakel, to the assessor's office. As to what was there *said*, the evidence is conflicting, but as to what was *done*, there is the greatest certainty. Although by this notice plaintiff in error was invited to call and schedule its property, as required by law, and although, by its proper officer, plaintiff in error did call, it did not schedule its property. What it did, was to execute and

leave with the assessor, to be by him presented at the proper time, a petition to the town board of review, wherein it was represented that it owned the property set opposite its name; considered itself aggrieved, and complained that the property thereafter described was assessed too high, for the reason it was a corporation under the laws of this State, but had no paid up capital; that it did a commission business, using its customers' money to margin all deals made for their account; that it had rented rooms, and had expended $1300 in fixtures therefor, and should be assessed only on the value of such fixtures, and prayed a review and correction of the assessment accordingly. Notwithstanding the fact of the making and delivery of this petition for review of assessment by the town board, the bill charges that Skakel was told by some one in the assessor's office, that the assessment would be adjusted to the statement just made, and that reliance was placed on such representation, and nothing further done in the matter. McKinnor, the deputy assessor who received the petition, swears that he was applied to at the assessor's office by plaintiff in error to reduce the assessment, but refused so to do, and referred plaintiff in error to the town board for review, and supplied it with blanks for that purpose.

We fail to perceive that in anything the assessor did or failed to do, he deceived or misled plaintiff in error. If plaintiff in error relied upon an assurance of the assessor that he would reduce the assessment to the value of the furniture and fixtures, why petition the town board to review and reduce the assessment? The execution of the petition for review is not denied, though it is charged the agent of plaintiff in error did not know he was executing a petition. It was his duty to know the contents of the instrument he was executing. The charge and pretence that plaintiff in error, acting through its agent, did not know the contents of the paper it formally executed, in respect of so important a matter of business, can not be seriously considered.

Plaintiff in error has, in our opinion, utterly failed to show any fact or circumstance tending to impeach, for fraud, the assessment of its property as made by the assessor, and reviewed and confirmed by the town board. That its petition to the latter board was received and considered, is conclusively shown by the action of the board in reducing the assessment from $10,000 to $5000, and if plaintiff in error was dissatisfied with the action of the town board in the premises, it should have availed itself of its further legal remedy, viz, by complaint, as one aggrieved, to the following July meeting of the county board, whose power to correct matters of over-assessment was ample. (Revenue act, sec. 97.) This it did not do. Not having availed itself of its adequate legal remedy, plaintiff in error must bear the consequences of any over-valuation and assessment of its property. A court of equity could afford it no relief. *Adsit* v. *Lieb,* 76 Ill. 198; *Humphrey et al.* v. *Nelson,* 115 id. 45. See, also, *Spencer et al.* v. *The People,* 68 Ill. 510; *Republic Life Ins. Co.* v. *Pollak et al.* 75 id. 292; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561; *The People* v. *Big Muddy Iron Co.* 89 id. 116; *English* v. *The People,* 96 id. 566; *Lyle* v. *Jacques,* 101 id. 644; *Felsenthal* v. *Johnson,* 104 id. 21.

The charge of fraud against the action of the State Board of Equalization in raising the valuation of the personal property, and in valuing for taxation the stock and franchise of plaintiff in error, is without support. The courts can not inquire into the manner in which, or the basis adopted by, the State Board of Equalization to ascertain and arrive at the value fixed on this property, or to change the valuation they may have made. *Republic Life Ins. Co.* v. *Pollak,* 75 Ill. 292.

The general doctrine of this court is, that a court of equity will not entertain a bill to restrain the collection of a tax, except in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, or where the property has been fraudulently assessed at too high a

rate. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co. supra.*) The *gravamen* of this bill, fraud in the assessment, being unsupported by the evidence, the bill was properly dismissed.

The decree of the Superior Court of Cook county, dismissing the bill, will therefore be affirmed.

*Decree affirmed.*