# The Ottawa Glass Company

*v.*

# H. A. McCaleb, County Clerk, etc.

1. TAXES AND TAXATION—*capital stock of corporation.* The legislature may rightfully provide for taxing the capital stock of corporations, instead of the shares in the hands of the holders, and require corporations to pay such tax, leaving them to deduct the same from the dividends.

2. SAME—*franchise.* A franchise of a corporation is property, and has a value capable of being estimated, and is, therefore, not only liable to be taxed, but, under the constitution, is required to be in some appropriate mode.

3. SAME—*relief against excessive valuation.* If the officers provided by law for assessing property for taxation, value certain property as a franchise at too great a sum, or more, in proportion to other property, in the absence of fraud, or want of power, the courts can afford no relief against the over valuation.

4. SAME—*mode of assessing franchise and capital stock.* The State board, to find the cash value of the stock and franchise of a corporation, took the fair cash value of the stock subscribed and paid for, and to this added the fair cash value of its indebtedness, except for current expenses, and from this deducted the equalized value of its tangible property, and took the sum left as the fair cash value of the capital stock and franchise: *Held*, that there was nothing illegal or unjust in the mode adopted, and it was not a taxation of the debts.

5. SAME—*injunction in equity.* A court of equity will never restrain the extension of a tax on the tax books, unless it is wholly unauthorized, and void in all its parts. If any portion of the tax is valid, the court will never interpose, until the taxes have been extended, and not then, until the tax-payer has paid or tendered such taxes as are legal.

6. The courts can not interfere to prevent the collection of taxes, unless they are void, or levied without power on the part of the officers executing the revenue law. As long as such officers are acting under the law, in imposing and collecting taxes, the courts will not interfere, but where they transcend their powers, and act without warrant of law, the courts may give relief.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. ARTHUR J. CATON, for the appellants.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellants filed their bill in chancery, to restrain the extension of the State and other taxes against the property of the company, which had been assessed and returned for the purpose. The return made by the Auditor of Public Accounts, was the amount agreed to and fixed by the board of equalization. The township assessor returned the capital stock as given in by the company at $32,500, which was divided into shares

of $100 each, all of which had been sold and paid for, and the proceeds invested in property owned by the company. The bill averred that the shares of capital stock were worth no more than 75 cents on the par value of the same.

The company also listed for taxation, $13,000 of personal property, and $33,000 worth of real estate, making, at the valuation they placed on their property, $46,000 in the aggregate. The county board, in equalizing the assessment of the various towns of the county, raised this valuation to $50,690; but the State Board of Equalization reduced it to $37,257, and it was so returned by the Auditor to the county clerk, for the extension of the several taxes on that sum.

The bill charges, and the demurrer admits, that the State board found the full cash value of the capital stock and franchise of the company to be $32,500; that they added to that sum the amount of the indebtedness owing by the company, being $103,500, returned to the town collector, making the sum of $136,000, and then in some manner reduced that amount to $98,677, which they called capital stock, and from which they deducted $37,257, the equalized value of their tangible property, leaving for taxation the sum of $61,420, which amount was certified to the county clerk upon which to extend the several taxes, in addition to the tangible property of the company.

The officers of the company, conceiving the valuation of the capital stock and franchise against the company to be unauthorized and oppressive, filed this bill to enjoin and restrain the county clerk from extending the tax against this valuation on the collector's books. Defendants demurred to the bill. The court sustained the demurrer, *pro forma*, and rendered a decree dismissing the bill, and the company appeals.

No question is made as to the tangible property or its assessment; but it is urged, that there is no constitutional warrant for the State board to assess the capital stock and franchise against the company for taxation; that the shares belong to the stockholders, are their property, and they should pay taxes on them; that to do so is to tax the company on property and

rights which belong to others, and which the company does not own. But it has been held, that a corporation is possessed of three kinds of property subject to taxation: First, the capital stock; second, the corporate property; and, third, the franchise; and that the shares may be assessed against their owners. See *Gordon* v. *The Appeal Taxes*, 3 Howard, 143, and *Porter* v. *The Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, and the authorities there cited.

Our General Assembly have not gone the entire length of the doctrine announced in *Gordon's case.* They, on the contrary, have provided that where the tangible property or capital stock of a corporation is assessed for taxation, the shares shall not be assessed against the holders thereof. (See clause 4, sec. 3, chap. "Revenue," R. S. 1874, p. 858.) Thus it is seen that the shareholders, under this provision, escape taxation on their individual shares, when the company lists their tangible property as capital stock. We perceive no excess in the exercise of power by the General Assembly, in making this provision. The company, through its directors, in exercising the franchise, and managing the business for the shareholders, act as *quasi* trustees; and their relation to each other is so close, in the management of the corporation, their business and property thus held and managed, that no reason is perceived why the General Assembly, if they believe that such a mode is better calculated to prevent the shares from escaping their just proportion of taxation, may not require the taxes to be paid by the corporation, and collected by them of the shareholder, by deducting the amount from his dividends or otherwise.

That a franchise has a value, and that it may be ascertained, is, we think, as clear as that a chose in action has a value that may be estimated. In estimating its value, more facts may have to be considered, as it has no market value. But the very fact that it grants rights, privileges and exemptions, not enjoyed by individuals generally, makes it desirable and gives it value. The length of time the corporation may exist, the business to which it relates, its location, and a variety of

other circumstances, all, of course, enter into the value of the privilege, and should be considered in ascertaining its value. But that it has a taxable value, we entertain no doubt. And if it is property and has value, it, under the constitution, is not only liable to be taxed, but is required to be, in some appropriate mode.

If it be urged that the constitution requires that all property shall be taxed, according to its value, so that it may only be required to bear its proportion of the necessary burthen of taxation, and this property is overvalued, and, therefore, must pay more than its share, then we can only say, that the court are utterly powerless to review and fix its proportionate value. The valuation of property is conferred upon, and is solely intrusted by the organic law to another and different class of individuals and officers, than those connected with the judicial department of the government. See *The Republic Insurance Co.* v. *Pollak*, 75 Ill. 292. The constitution has declared that the persons required to make the valuation shall be elected or appointed for the purpose, and it neither gives nor contemplates an appeal from their action, to the judicial or to the executive department of the government.

It is urged that the rule adopted by the board of equalization is unjust, illegal and unconstitutional. It provides that to ascertain the fair cash value of the stock and franchise of incorporated companies, the fair cash value of the capital stock be added to the fair cash value of the debts of the company, except the debt for current expenses, and when so added together, the amount shall be considered as the fair cash value of the capital stock and franchise, less the equalized value of the tangible property, which is to be deducted from the sum thus found for the cash value of the capital stock and franchise. This, then, leaves the balance, when equalized, as the taxable value of the capital stock and the franchise.

To determine whether this is illegal or unjust, it may be well to consider the reason of the rule. Its purpose is to ascertain the value of the capital stock and franchise, which are required by the statute to be assessed and taxed. Now, where

the shares of the capital stock have any value as an article of sale. it is because the purchaser supposes that the property of the company, tangible, intangible and the franchise, are sufficient, if the affairs of the.company were wound up, to pay all the debts owing by the company, and to pay, on a distribution of the surplus among the shareholders, an amount equal to the per cent he gives for the shares. If he gives 75 per cent of the par value, it must be because he supposes, if the property and franchise of the company were sold, that it would pay all the debts, and leave, for distribution among the shareholders, an amount equal to three-fourths of the aggregate amount of the shares held by individuals.

If, in this case, the board of equalization found that the shares were worth seventy-five cents on their par value, they, under the rule, found that the company must have had property, of all descriptions, with the franchise, equal to the entire indebtedness, and three-fourths of the aggregate amount of the shares issued to and held by individuals. According to the return, that would, in the aggregate, amount to $127,875. If, from that, they, under the rule, deducted the amount of the equalized value of the tangible property, say $37,257, it would leave $90,618 as the value of intangible property and the franchise. But this latter sum was reduced $29,198, for, we suppose, equalization on values of personal property, which leaves the $61,420, returned by the board to the county clerk for taxation; but a trifle over two-thirds of the value thus found. Now, we see nothing illegal or unjust in this mode of proceeding.

In the case of *Porter* v. *The Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, it was held that the term capital stock, as used in the act of 1872, did not refer to or embrace the shares, but was intended to and embraced the property of the corporation subject to taxation. Hence the means that the company have to meet existing indebtedness, should be taxed precisely as if held by an individual. The law does not authorize the indebtedness of a corporation to be deducted from the taxable value of their property, whether tangible or intangible. Hence, when the board found the

36—81ST ILL.

value of the intangible and the tangible property, and deducted the latter from the amount, and then equalized the balance, they neither taxed the shares nor did they tax the debts owing by the company, as was held in *Porter's case, supra,* but simply taxed the property held by the company, with which the debts could be paid, and a distribution to the shareholders, were the company to be dissolved and its property distributed.

When all the allegations of the bill, and exhibits filed therewith, are considered, we think there is no doubt but the board applied the rule approximately, as we have herein suggested, and that there was no departure from its principles. And the facts alleged in the bill repel the idea that there was either mistake or fraud in making this assessment, or arbitrary or illegal action by the board.

The rule may not, in every case, lead to precisely accurate results, but when the corporation makes a full return, then it must approximate correctness, at least as nearly so as any other rule that could be adopted. All rules and means for ascertaining the amount and value of property for taxation, have in their application but approximated accuracy.

Again, a court of equity will never restrain the extension of a tax unless it is wholly unauthorized and void in all its parts. If any portion of the tax is valid, then the court will never interpose until the taxes have been extended on the collector's books, and not then until the tax-payer has paid or tendered such taxes as are legal. The court will not stay a tax which is legal, because some portion of it may be illegal and void. The legal portion must be paid without hindrance or obstruction. In this case it would be inequitable to restrain the portion that is legal, and admitted to be legal, until the portion in dispute should be litigated and determined.

The taxing power is legislative and political in its nature, and is not under the judicial power of the State; and the courts can not interfere, unless the tax is void, because levied without power on the part of the officers executing the revenue laws. It devolves upon the General Assembly to provide the revenue and the means for its levy and collection, without the inter-

ference of either of the other departments.   As long as officers are acting under the law in imposing and collecting taxes, the courts will not interfere, but when they transcend their powers and act without warrant of law, the courts may give relief. Hence the legally constituted board of equalization have acted within the scope of their authority, and if they have reasoned incorrectly and erred in judgment, we have no power to review and correct their action.   They are empowered by law to fix the value of the property of corporations for taxation, and we can afford no relief, even if the rules that govern them are not such as commend themselves to our notions of the best means of ascertaining such value.

There appearing no error in this record, the decree of the court below must be affirmed.

*Decree affirmed.*

Mr. JUSTICE DICKEY, dissenting:

By the bill in this case, it is alleged that the corporation made out and delivered to the local assessor a sworn statement, in compliance with the statute, showing the name and location of the company; that the amount of capital stock authorized was $32,500, and that this was divided into 325 shares; that the amount of capital stock paid up was $32,500; that the number of shares issued was 325; that these shares had no market value, but the statement did not show the actual value of the shares.   The statement showed the total amount of indebtedness to be $103,500, and that the total assessed value of its tangible property was $46,000.

This statement passed, as required by law, from the assessor to the county clerk, from the clerk to the Auditor of State, and was by the Auditor laid before the board of equalization.

It is plain, that thereupon it became the duty of the board to "value and assess the capital stock" of this corporation in the manner prescribed by the revenue law, that is to say, to so value the same as to ascertain and determine the fair cash value of such capital stock over and above the assessed value of the tangible property of the company, (sec. 3 Rev. Law of

1872) that is, the excess of the value of the capital stock of the company over the assessed value of its tangible property.

The bill shows, that, by equalization, "the assessed value" of the tangible property of this company was fixed by the State Board of Equalization at $37,257.

The bill then states two hypotheses, and says one or the other is true, and insists that in either case, the company is entitled to have an extension of tax on its capital stock restrained.

The first hypothesis is, that the board of equalization determined the value of this capital stock to be $61,420, and assessed the company for the full amount of this capital stock, in addition to the amount of the assessment of the tangible property. If this were true, the assessment was unlawful to the extent of $37,257, the assessed value of the tangible property, for the statute requires the excess of the value of the capital stock over the assessed value of the tangible property to be valued and assessed, and not the entire value of the capital stock in addition to the value of the tangible property. If the value of the capital stock was found by the board to be $61,420, and the assessed value of the tangible property was $37,257, plainly the excess was only $24,163, and the complainant was entitled to restrain the extension of the tax on more than $24,163, as tax on capital stock.

The second hypothesis stated in the bill is, that the State board found and determined the total value of the capital stock to be $32,500, and having so done, the board, by mistake or fraud, called the value thereof $98,677, and then found the excess of this value over the tangible property to be $61,420, when, in fact, the assessed value of the tangible property was $37,257, and the value of capital stock, as found by the board, $32,500; so that there was, in fact, no excess of value of the capital stock over that of the tangible property.

Upon the first hypothesis the board had no power to assess a tax on more than $24,163, as tax on the capital stock of the company; and upon the second hypothesis the board had no power, by law, to assess any tax on the capital stock of this

company, for there was no excess over the assessed value of its tangible property, to be assessed as such.

This is not a case where a party complains that it has been assessed too high. The bill does not in any regard call in question the judgment of the board as an assessor. The complaint is, that having exercised its judgment aright, and properly ascertained the relative valuations of the tangible property of this company, and of its entire capital stock, and without changing that judgment, the board arbitrarily and in defiance of the express provisions of the statute, and without authority, proceeded to assess a tax upon property not subject to taxation at all.

If the first hypothesis be true, $61,420, the whole value of its capital stock was *not* subject to taxation, only a part of that value, $24,163, was subject to assessment.

On the second hypothesis, no part of the value of the capital stock was subject to assessment at all.

The judgment of the circuit court, it seems to me, should be reversed and the cause remanded, with directions to allow the defendant to withdraw the demurrer and answer the bill.