## Denver Union Water Co. v. Board of Co. Com'rs of Arapahoe Co.

*District Court of Arapahoe Co, Aug. 15, 1900, No. 25894,*

PALMER, J., delivered the opinion of the court.

This case comes to this court on an appeal by the

plaintiff from the action of the defendant, whereby it, sitting as a county board of equalization, attempted to assess the franchise of the plaintiff.

Objections were urged against the maintenance of the appeal on the ground that other matters were contained in the complaint which were not the subject of consideration by the board. The only matter here presented is, that the assessment by the board of the plaintiff's franchise was unjust, unlawful and erroneous, and that to subject the plaintiff to the payment of taxes on the assessment as fixed by the board would be to impose and unjust and unequal burden upon it greater than the tax burden borne by other corporations in said county. We should regard this objection as vital and controlling were it not that a former attorney for the defendant had considered that this was a proper matter to be presented on his appeal and the pleadings had been prepared with that in view. The history of the case is briefly as follows: In 1896 the water company returned to the county assessor a schedule of its property, as provided by the statute, placing the valuation of its taxable property at $537,430. On July 2nd of that year the assessor sent a notice to the company, in which, after quoting extracts from the revenue laws of Colorado ( Sec. 2817 G.S. '83, 2 Mills § 3769, and §§ 2 and 7 of L. '93 pp. 412, 415, 3 Mills §§ 3790, 3790a), he notified it that in compliance with said sections he had assessed its personal property at $3,643,135, in addition to the amount in plaintiff's schedule, making the total assessment of $4,180,565. Of the said additional amount so added by the assessor was the item, "Value of franchises, $2,000,000," and it is of the action of the assessor in so placing this item on the assessment roll, and of the board in recognizing it as a valid assessment that the plaintiff complains. No complaint is made as to the increase on the other property scheduled, and we assume that with the action of the board as to that property the

plaintiff is content. When the matter was before the board the assessment on the value of the franchises was by it reduced from $2,000,000 to $300,000.

Several questions are involved in the consideration of this case. They may be stated as follows:

First: Are franchises such property as may be assessed?

Second: If franchises are assessible property is there any authority of law whereby they may be assessed?

Third: Has any assessor the right or authority to change the sworn return made by the plaintiff company and to arbitrarily place property on the assessment roll?

Fourth: Was the valuation of the board of county commissioners unjust and unequal when compared with assessments on franchises of other corporations?

Is a franchise of a corporation assessable property? Under section 10, article 10 of the constitution, "All corporations in this state or doing business therein shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax."

Section 3765 (2 Mills) provides that "all property, both real and personal, within the state, not expressly exempt by law, shall be subject to taxation."

Franchises, if they are property, are not among the exemptions. No one will contend that a franchise is real property, but it is insisted and as strenuously denied that it is personal property. Sub-section 3 of section 3782 (2 Mills) defines personal property as follows: "The term 'personal property' includes everything which is the subject of ownership not included within the term 'real estate.'" If this definition is sufficient to include a franchise, then it is taxable property and must be assessed as such according to its value as other personal property under the general revenue laws of the state.

It may be observed here that there is a wide difference between what is known as a franchise tax and a tax upon a franchise and they should not be confused; with the former we have nothing to do in the consideration of this case.

A franchise is a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but which should be reserved for public control and administration, either by the government directly or by public agents, acting under such conditions and regulations as the government may impose in the public interest and for the public security. California v. Southern Pacific Railway Co. 127 U. S. 40, 8 Sup. Ct. 1073.

No private person can establish a public highway or a public ferry or railroad or charge tolls for the use of the same without authority from the legislature, direct or derived. These are franchises. No private persons can take another's property, even for a public use, without such authority, which is the same as to say that the right of eminent domain can only be exercised by virtue of a legislative grant. This is a franchise. No persons can make themselves a body corporate and politic without legislative authority. Corporate capacity is a franchise. The list might be continued indefinitely.

A franchise may be defined as a privilege or authority vested in certain persons by grant of the sovereign power to do and perform acts which, without such grant, they could not do or perform. Lewis on Eminent Domain, § 155.

The supreme court of this state, quoting the language of Chief Justice Taney in Bank of Augusta v. Earle, 13 Pet. 596, says: "Franchises are special privileges conferred by government upon individuals which do not belong to the citizens of the country generally of common right." D. & S. Railway Company et al. v. Denver City

Railway, 2 Colo. 682.

While definitions might be multiplied of a word of such extensive significance they would not vary much either in shade of thought or expression from those given above.

Is, then, this incorporated right, privilege or power, this intangible species of property which may and does have as certain, definite, permanent, and productive a value to its owner as any kind of tangible and corporeal property can possibly have, and which enjoys the protection of the sovereign power of the government, such a property as should bear its share in the maintenance of the very power from which it derives its right to exist? This species of property has ever been eager in its demands for its sacred right of recognition by both law and equity, and it should be as ready, willing and impatient to assume its proportionate burden along with all other kinds of property which contribute to the support of the government. It has been well said: "It is a cardinal rule which should never be forgotten, that whatever property is worth for the purposes of income and sale it is worth for the purposes of taxation."

The supreme court of California in C. P. R. R. Co. v. Board of Equalization, 50 Cal. 35, says: "The petitioner derives 'its right to exist' solely from and under the laws of the state. When it ceases to exercise all the privileges thus derived (assuming that it may, or of its own option, abandon them, and at the same time relieve itself of the duties and obligations necessarily joined with them) it may, perhaps, be in a position to contest the right of the state to tax the moneyed value of the franchise, as actually employed and in connection with the property acquired and held by means of the powers conferred with the franchise. The franchise at least in such connection, is property subject to taxation."

In Commonwealth v. Provident Institution for Sav-

ings the supreme court of Massachusetts, 12 Allen p. 312, says: "It certainly cannot be contended that the franchise granted to and exercised by a savings bank is not a proper subject for an excise or duty. How is it to be graduated or measured? It would not be reasonable to impose it arbitrarily, irrespective of the benefit or advantage which the exercise of corporate privileges conferred on the body in which the excise was laid. Some method must be resorted to in order to asertain a fair and just basis on which to calculate the amount of the tax so that there may be some proportion between the benefits received and the sum paid for their enjoyment. This is essential in order that the excise or duty may be reasonable, as is required by the clause in the constitution already cited. In the statute under consideration the legislature have adopted as a rule by which to ascertain the amount of the tax which each bank is to pay at stated periods, the extent of its business, during the six months preceding. This is certainly a reasonable standard, because it graduates the amount of the excise on each franchise according to the capacity of the corporation for business, and the value of the privilege which it exercises under its charter."

The supreme court of the United States in Veazie v. Bank Tenn. 8 Wall. p. 533, says: "But it cannot be admitted that franchises granted by a state are necessarily exempt from taxation; for franchises are property, often very valuable and productive property, and when not conferred for the purpose of giving effect to some reserved power of a state, seem to be as properly objects of taxation as any other property."

Unless exempted in terms which amount to a contract not to tax, the property, privileges, and franchises of a corporation are as much the legitimate subjects of taxation as any other property of the citizens which is within the sovereign power of the state. Repeated decisions

of this court have been, in respect to such corporations, that the taxing power of the state is never presumed to be relinquished, and consequently that it exists unless the intention to relinquish it is declared in clear and unambiguous terms. North Missouri R. R. v. Maguire, 20 Wallace, 46; Society for Savings v. Colte, 6 Wallace, 606, Philadelphia & Wilmington R. R. Co. v. Maryland, 10 How. 393; Providence Bank v. Billings, 4 Peters, 561; Jefferson Bank v. Skelly, 1 Black; 436; Ohio Life Insurance and Trust Co. v. Debolt, 16 Howard, 416.

The supreme court of Illinois in Belleville Nail Co. v. The People ex rel. under a statute which, while differing from that of Colorado is in effect not very different, says: "The capital stock and franchise of a corporation are recognized by the statute as to be listed, valued, and taxed as personal property."

In some states all taxation as far as possible is brought to an *ad valorem* standard. Franchises are property and in such states may be taxed by a valuation being estimated for the purpose, either separately or as a part of the aggregate corporate property. Cooley on Taxation, 383; Worth v. Petersburg R. R. Co., 89 N. C. 301; Ottawa Glass Co. v. McCaler, 81 Ill. 556; San Jose Gas Co. v. January, 57 Cal. 614.

Many other cases might be cited in support of this proposition, but we deem it unnecessary here.

The conclusion is natural and irresistible that a franchise is such a property as should be required to bear its burden of the taxation for governmental purposes and is therefore assessable.

Having arrived at a satisfactory and conclusive answer to this question we next approach the proposition as to whether the legislature has provided a method or means whereby this class of property may be taxed. The authority of the legislature under the constitution to enact such appropriate legislation is beyond question.

The language of the constitution is explicit and susceptible of no misconstruction. "All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them within the territorial limits of the authority levying the tax."

This was part of the constitution of the state of Colorado adopted nearly a quarter of a century ago. But it is not enough that such a plain provision should be contained in the constitution. It cannot be contended, and it is not true, that this provision is self-enforcing. Some action is necessary on the part of the legislature in and by which effect may be given to the constitutional provision. We look in vain for any enactment by authority of which the assessor might proceed; any machinery which he might put in operation to accomplish the object desired. Cases have been cited in support of the proposition that a franchise was taxable property. A reference to these cases where the tax was imposed will disclose the fact that in each instance there was a method provided under the authority of the constitution of the state whereby the tax might be levied. The assessor himself lamented the conditions which surrounded him, for in his report to the defendant on Dec. 31, 1899, he uses the following language:

"The legislature, whose exclusive function it is so to do, has failed to prescribe any method by a general and uniform law by which assessors may fix and assess the value of what is known as intangible property, $i.\ e.$, certain exclusive rights or privileges, or franchises, or contracts appurtenant to certain property, or business, or plant transferable and salable, and having an appreciable marketable value, distinct from the thing to which it is appurtenant, and yet a part of it. Such is the good will of a business; the exclusive right to the use of a name, a special contract conferring exclusive privileges, the right

to the occupancy or use, in one way or another, of public ways and streets, and many other exclusive privileges or rights which will readily suggest themselves as being the most valuable incident to the property or business to which they may be appurtenant.

"Now while authority is given by the statute for the assessment of all property, intangible as well as tangible, no general method of ascertaining or fixing the value of intangible property has been provided. No description of its nature or extent is required in any of the lists or schedules required to be made, nor is the assessor authorized to make any inquiry as to how, or to what extent, the amount or value of the property, for the purpose of income or sale, is affected by the intangible appurtenances thereto.

"Different methods in different states for the same kind, and different methods in the same states for differ-kinds, have been adopted for fixing for taxation the values of such intangible property. In some instances the value is determined by the capitalization or the ascertainable market value, in others by the amount of the business, the gross or net earnings. Whichever or whatever be the most equitable or just method, it is not for the assessor to determine, but for the legislature to prescribe, and this it has failed to do.

"As every assessor is, or ought to be, called upon to value such property for taxation, it is manifest that the method by which such value is to be ascertained should be uniform throughout the state, and should be embodied in a legislative enactment. For the lack of such an enactment millions of dollars of taxable property in the state escape taxation, and are practically exempt, despite the constitution."

The same views are expressed in an official communication addressed to said defendant by his excellency, the Hon. Charles S. Thomas, governor of the state of

Colorado, as chairman of the state board of equalization. In his letter under date of July 10, 1899, he says:

"We have not specifically assessed franchises as such because the statute furnishes no machinery whereby they may be assessed. Years ago Lake county attempted an assessment of gross output of mines. The effort was a failure, not because the property was untaxable, but because the constitutional right to tax it was not self-executing. New York has experienced similar difficulty and she has passed an act of recent date, whereby franchises are classed as real estate and their value ascertained by deducting the value of corporate property from the value of corporate stocks and bonds. Similar legislation here must, I think, precede any successful effort to reach and assess franchise values."

But we think the question is set at rest by our own supreme court in the case of Stanley v.The Little Pittsburg Mining company, reported in 6 Colo. (Sup. Ct.) page 415. In that case the question presented was whether under the revenue laws of this state a direct tax could be imposed upon the annual net proceeds of mines. Section 3 of article X of the constitution provides that:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; provided, that mines and mining claims bearing gold, silver, and other precious metals (except the net proceeds and surface improvements thereof) shall be exempt from taxation for the period of ten years from the date of the adoption of this constitution, and thereafter may be taxed as provided by law."

It was insisted that the legislature had taken no action on the subject and that the constitutional provision was not self-enforcing and that the attempt to impose

such tax was, therefore, without authority of law, and the supreme court acquiesced in that view. The court says:

"The only reference to the subject of taxing the net proceeds of mines, made in any act of the legislature since the adoption of the constitution, which has become a law, appears in the act approved March 20, 1877, general laws, page 742. (2 Mills Ann. St. § 3766,) Section 5 of this act provides as follows: 'The following classes of property shall be exempt from taxation, to-wit: First, mines and mining claims bearing gold, silver and other precious metals (except the net proceeds and surface improvements thereof), for the period of ten years from the 1st day of July, A. D. 1876; second, ditches, canals and flumes etc.'

"This section merely excepts the net proceeds of mines from the several classes of exemptions specified therein. It reiterates the permissible language of the constitution, in respect to the taxation of such net proceeds, but contains no mandatory provision on the subject. There is, therefore, no provision, constitutional or statutory, which in terms requires the levy of the tax complained of."

In that case it was contended that section 4 of the revenue act (2 Mills Ann. St. § 3765) which provides that "all property, both real and personal, within the state, not expressly exempt by law, shall be subject to taxation," was broad enough to include the net proceeds of mines, and that being personal property, they were liable to taxation, but the court says:

"Conceding that all minerals upon being severed from the earth become personal property, also that the money utilized by the sale of minerals comes under the same designation, it is a grave question whether there is not still lacking the requisite legislative authority to sustain the additional assessment in the case before us."

The court further says: "That it belongs to the legis-

lature department to determine the persons and objects to be taxed, subject to constitutional limitations, and to provide the necessary mode and provisions for making the law effective is a fundamental principle of law."

In that case the court directed attention to the fact that notwithstanding the authority had been given to the legislature to provide a method for the taxation of the net proceeds of mines, no action was taken for six years to make the provision effective. And so in the case at bar. For nearly twenty-five years, with a plain provision of the constitution before them, twelve legislatures have convened, yet, through some oversight, have failed to provide a means in and by which that intangible thing known as a franchise might be assessed. We are, therefore, of the opinion that at this time there is no authority of law for the taxing of franchises. It is important that this question should not be longer delayed, and that one of the first actions of the next legislature should be to pass a law which should give greater life and effect to section 10 of article 10 of the constitution, by providing a means whereby such valuable rights as franchises may be taxed.

Until such legislation is had the hands of the court must remain tied and its powers continue ineffectual to assist those who suffer from bearing the burdens which others should share. Until then the responsibility must lie at the door of the legislature, and not upon the courts, whose duty it is to interpret and administer the laws as they find them upon the statute books, without fear or favor.

Bearing upon this question it is not unimportant to note the action of the legislature of the state of New York at its regular session in the present year. That state was confronted by the same problem that confronts this. Franchises worth millions of dollars were escaping taxation for the same reason that they urge here, but the

legislature took the matter in hand and attempted to remedy the evil. The attempt was only partially successful, and the governor regarded the matter of such supreme importance that he caused a special session of the legislature to be called to amend the act so that the object sought might be attained.

The conclusion we are forced to arrive at upon the second proposition involved in this appeal is decisive of the entire case, and we deem it unnecessary to enter into any discussion of the third and fourth questions raised.