# THE REPUBLIC LIFE INSURANCE COMPANY

## *v.*

## JOSEPH POLLAK *et al.*

1. TAXATION — *courts cannot relieve against excessive valuation of property.* Under our constitution requiring property to be valued for taxation by the persons to be appointed or elected in such manner as the legislature shall direct, and not otherwise, neither the courts nor any other department of the government have the power or right to review or change the assessments of property made by the proper officers. In the absence of fraud or want of power in those officers the courts are powerless to give relief against an excessive valuation.

2. SAME — *State Board of Equalization.* The State Board of Equalization being composed of persons elected to assess and fix the value of such property as has been designated by law, their valuation is conclusive and final, and the courts cannot examine the mode of reasoning or the basis adopted by them to ascertain the value of property.

3. SAME — *exemption.* The re-assurance, reserve and premiums of life insurance companies being collected are subject to taxation, as they are claims and funds that would be taxable in the hands of a natural person.

4. SAME — *shares in corporations exempted where capital stock is taxable.* Where the capital stock of corporations is taxable, the shares of stock are not subject to taxation in the hands of shareholders. But even if the latter are erroneously assessed, that affords no reason why the capital stock should not be assessed and taxed. It is the fault of the shareholders if they pay a tax on their shares.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in chancery, filed by the Republic Life Insurance Company against Joseph Pollak, who was then county clerk of Cook county, to enjoin the State, county and other taxes against the company upon the assessment of its property and capital stock, as equalized and assessed by the State Board of Equalization, for 1873.

The court denied the motion for injunction, and the tax was extended by the clerk. The complainant then amended its bill, making Hermann Lieb, the county treasurer and *ex officio* collector, and P. M. Cleary, the township collector, defendants, and prayed the court to enjoin them from attempting to collect any of the taxes assessed and extended upon the complainant upon the assessment of capital stock and franchise of the company, and also upon real and personal estate described in the bill, upon the increased assessment thereof by the State Board of Equalization. The defendants filed a demurrer to the amended bill, which the court sustained, and dismissed the bill. The company appealed.

Messrs. BENNETT, KRETZINGER & VEEDER, for the appellant.

Mr. JAS. K. EDSALL, Attorney General, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

We are asked, in this case, to review the case of *Porter* v. *Rockford, Rock Island & St. Louis R. R. Co. ;*\* but after a careful reconsideration of the rules there announced, in the light of appellant's argument in this case, we perceive no reason to overrule or even modify any thing that was said in that and other cases decided at the same time, involving questions relating to the taxation of the property and franchises of corporations. Most of the questions presented by this record are discussed in those decisions, and being satisfied with these decisions, and what we there said, we have no inclination to again discuss the questions.

It is urged that the board of equalization has overvalued the property assessed, and adopted a false rule for ascertaining such value. Even if it were true that there was too great a value placed on this property, counsel mistake the power of the court to afford relief for that reason. Our constitution, article 9, section 1, provides that "the general assembly shall provide such revenue as may be needed, by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property; such value to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." Thus it will be seen that all power to fix a valuation is taken from each of the departments of the government. It is unmistakably vested in the persons elected under the requirements of the statute, and it can only be fixed by them, and not otherwise. The legislative branch of government could not exercise this power, nor could the executive, because the constitution has not only vested it in the persons elected, as directed by the general assembly, but all other persons,

---

\* The case above cited was decided at the January term, 1874, but is improperly reported as of the January term, 1875, in 76 Ill. 561.

bodies, departments, or such bodies combined, are expressly prohibited from performing that duty.

Nor is there any power, expressed or implied, by which the courts can fix a valuation, or review the action of the assessors. They are invested with the sole power, and we are aware of no authority to review their action. The law has not, nor can it, in view of this constitutional provision, empower the courts to fix the valuation of property for taxation. We regard no proposition clearer. If the courts may hear evidence and change the valuation fixed by the officers elected under the law to perform that duty, then it is the courts, who are not elected or appointed for the purpose, who fix the value, and that would be to make the valuation otherwise than is peremptorily required by the constitution. For the courts to hear evidence and change the valuation fixed by the assessors would be in direct and palpable violation of the constitution. When those officers have acted it is final, and the tax payer must submit to the action of the officer who is clothed with the sole power to make the estimate of the value, unless he can show it was fraudulently made, or that the property assessed was not liable to taxation, or the legislature has, in authorizing the tax, disregarded or transcended the principles of equality, or where a tax has been levied when not authorized by law.

Fraud vitiates all acts, and this as well as others. But when the officer acts with a fraudulent purpose, to the injury of the tax payer, the latter may be relieved from the effects of the fraud. And when the officer assesses and values property exempt from taxation he acts without authority, and all of his acts in excess of his power are void. It was the manifest intention of the people, in ratifying the constitution, to make the action of the assessing officers final; and there are cogent reasons for the provision. If a party were allowed to contest the valuation of the property in the courts, after the books are returned, the tax extended and the warrant issued for its collection, the same thing could be done before the extension of the tax and the

issuing of the warrant. And if every tax payer might appeal to the courts, either before or after the warrant comes to the hands of the collector, the greater portion of the revenue could be tied up and delayed for years, and the very existence of the government endangered, as its life depends upon the requisite amount of revenue for its support.

For the purpose of preventing such delays and hazards this provision was, no doubt, inserted. In most governments such delays are not permitted in the laying and collecting their revenue, and such a policy would seem to be imperatively demanded. Nor does the fact that taxes are high, and in many instances oppressive, change the principle. An extravagant and wasteful administration of government does not at all change the principle. The taxes are levied and collected to meet the expenses of general and local government, all of which are under the control of the people.

They elect their officers, who inaugurate the policies of their government, and they know that a lavish expenditure of public money, or the creation of large State or local municipal debts, compels the imposition of heavy taxes to meet the expense. Again, they elect the officers who make these assessments, and it is for them to select men of intelligence, capacity and integrity for the purpose. If the people or their officers create debts, or adopt an extravagant policy in the expenditure of public funds, they must meet the burdens thus self-imposed, as the courts are no more able to relieve them from the conse-quences of such acts than from their just individual debts.

Governments are created to protect men in their natural rights, and with incidental protection to their civil or political rights. No means has been devised by which government can be maintained without the use of revenue, and that revenue must be directly or indirectly drawn from the governed. In different organizations different modes of acquiring such revenue are adopted. In our State the great central idea in collecting taxes is that every person owning or having prop-

erty in the State, and having the right to demand the aid of the government in its protection, as well as his own rights, whether of person, liberty, or property, must contribute to the support of the State government in proportion to the value of his property. The rule embraces corporations or intangible persons as well as natural persons. They hold property and require its protection. They transact business and enter into contracts, and require the power of the State to enforce them; and the great principle of natural justice demands that all who have the right to command and employ the sovereign power of the State to protect them in their rights, should contribute to the expense of the government, in arming itself with means and in sustaining the requisite official force to protect them in their rights.

Nor can it be said they should escape because they have never had occasion to call the government into active operation for their protection. It is owing to the fact that the strong, the wily, the unscrupulous and vicious know that this great power of government is held in reserve, and may be commanded at will by every person, that has rendered the individual secure in his person, liberty and property. Remove governmental power, and no man or corporation would be secure in any of these rights. When government is formed there is a tacit agreement that the government will protect all in their rights, and that each individual will contribute his just portion of the means, and his physical power when required, for its support and preservation. These are reciprocal rights and duties that are imposed by the compact that creates government.

That our revenue laws, based on and in conformity to the constitution, cannot or should not be so executed as to produce exact and equal burdens, is not surprising. However honest, intelligent, and well qualified the officers selected to fix the value, they are liable to err in judgment. All know that the question of value of property is one on which men equally

honest and intelligent widely differ. In fact, but a small portion of the property of the country has a known, fixed value. Hence at best the assessor can but approximate its value.

The principle upon which the government acts in raising its revenue is eminently just. The practical workings of the law may operate unequally, but that should not be attributed to the principle, but to the unfair manner in which the law is enforced. The constitution and the law are fair. Under them every person in the State has had his rights passed upon, and if the law has been strictly observed, no one has been wronged; but if, from the incompetency, recklessness, or partiality of the officers, the law has not been duly administered, that forms no ground for relief.

There can be no question that the board of equalization is composed of persons elected to assess and fix the value of such property as has been designated by law. And, in pursuance of their power under the constitution and the law, they have assessed and valued this property, and we are powerless to change the valuation they have fixed. Nor can we examine the mode of reasoning or the basis adopted to ascertain the value of the property. It may be illogical or even absurd, but that in nowise affects the exercise of the power. If we could look into the mode of reasoning adopted because it was wholly illogical, we would have the power to do so when it was not strictly logical. And to do so the courts would become the assessors of property and fix its value for taxation, and not the officers elected under the law and constitution for the purpose. We cannot, therefore, inquire into the manner in which the board of equalization arrived at the value fixed on the property named in the bill. But, from the allegations of the bill itself, we fail to see that there is the slightest injustice done to appellant by this levy.

The law requires all property to be valued for taxation at its true value, and we must presume that officers do their duty. If that has been done, as a rule, with the tax payers of the

State, an individual has no right to complain when he is taxed on but little, if any, more than half of his property, or his property has only been valued at half its worth in cash. From the bill, we are unable to see that appellant's property has been fixed above one-half, or, at most, slightly above that rate. If this is true, there can be no pretense that the slightest injustice has been done to appellant; but the wrong is to the government, and other tax payers, the property not having been assessed at its fair cash value. Nor can we take into consideration the fact that the tax payer, whether a natural or an artificial person, is embarrassed, in failing circumstances, or that the payment of large sums for taxes will diminish their profits or gains. We are invested with no power to relieve against such considerations. The constitution is imperative in its mandate that every person and corporation shall pay a tax on his or its property, according to its value. There is no power in the State to make any exceptions in their favor, and there being no such power, all must alike submit, and the law must be enforced as it is found, without reference to such considerations. When the people, through another constitutional convention, shall so provide, then relief will be afforded on such grounds.

It is urged that appellants are assessed on a portion of their property which is invested in bonds of the general government, and not liable to taxation. The allegation is: "That the total capital    *    *    *    derived from the sale of its stock, from its business, and from all other sources, at the time of said assessment, was $1,729,372.22, as shown in the statement    *    *    to the insurance department of the State of Illinois; and of this sum not less than $1,630,345.75 have been invested in, or composed of, real and personal property, which is taxed independently of their stock; in bonds of the government of the United States, which are exempt from taxation; and re-assurance reserve, and premiums due and in course of collection, which last two items are not found on hand and not subject to taxation." There is no allegation as to the value of

the real and personal property. It may be, and probably is, of but trifling value as assessed, as no reason is perceived why such a corporation should hold large amounts of either kind. Nor does it appear how much is invested in government bonds. For aught that is shown, it may be but a few thousand dollars.

It also fails to appear what amount constitutes the re-assurance reserve, and the premiums in the course of collection. But it is said that the re-assurance reserve and the premiums being collected are not subject to taxation. We fail to perceive why they are not, as they are funds and claims that would be, in the hands of a natural person. A merchant or other business man is taxed on the funds he has on hand, as well as on all debts owing him, that are collectible, or so regarded; and no reason is perceived why a corporation should not be required to contribute in the same way to the support of the government.

It is insisted, the shareholders are assessed and taxed on the stock they hold; if so, it is their own fault. The third section of the revenue law, by the fourth clause, has provided against double assessment, and declares that, when the tangible property or capital stock shall be assessed under the act, the shares of such stock shall not be assessed or taxed in this State. Hence the shareholders could not be legally assessed on their shares; and if they listed such shares, it was their own fault. They could, if they so desired, have avoided such a tax, and the presumption would be that they had claimed and received the exemption, after the assessment of the capital stock was made by the Board of Equalization. But, even if they did not, it concerns them alone, and in nowise affects appellants, who can only see to the taxes levied on the corporation. The exemption of the shares depends upon the assessment of the capital stock, and not the exemption of the stock on the assessment of the shares to the individual owners. The exemption is to them and not to the company; and if the owners fail to assert their rights, others cannot do so for them.

The amount assessed is not half of what the company own, independent of the value of their franchise and their capital stock, and the bill fails to show that they are overtaxed, even if we had the power to afford relief if they were.

The decree of the court below sustaining the demurrer and dimissing the bill is affirmed.

*Decree affirmed.*