(No. 20909.— )

FRED KINDERMAN, Appellee, *vs.* GEORGE F. HARDING,
County Collector, Appellant.

*Opinion filed October 23, 1931.*

JOHN A. SWANSON, State's Attorney, JOHN E. PEDDER-
SON, and LOUIS H. GEIMAN, (HAYDEN N. BELL, of coun-
sel,) for appellant.

COWEN & COWEN, (ISADORE BECKER, and MAURICE L.
ZARETSKY, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee, Fred Kinderman, filed a bill in the supe-
rior court of Cook county to enjoin the collection of a
part of the general taxes for 1928 against his four lots,
and apartment building thereon, at the southeast corner

of Washington boulevard and Kenilworth avenue, in Oak Park. The bill alleged an over-valuation for taxation and made allegations of fact relied on as showing that the over-valuation was fraudulently made. An answer having been filed denying all allegations of fraud in the assessment the cause was referred to a master, upon whose report of the evidence and findings and recommendation that the bill be dismissed for want of equity, and exceptions thereto, the cause was heard by the chancellor, and a decree was rendered finding that the assessed value of each of the lots in excess of $18,537 was excessive and fraudulent and enjoining the collection of taxes upon the excessive valuation. The defendant has appealed.

The court found that on April 1, 1928, the full fair cash value of the premises described in the bill was $200,400, while the full value fixed by the board of assessors and confirmed by the board of review was $257,731; that the complainant filed a complaint before the board of review, and upon notice from that board appeared before it in March, 1930, but did not obtain any relief. The court also found that the assessed value fixed by the board of assessors and confirmed by the board of review was $95,364, being thirty-seven per cent of the $257,731 fixed as its full fair cash value, and taxes amounting to $5130.60 were extended upon such assessed value. The regular quadrennial assessment of 1927 had been held invalid and a re-assessment ordered, and the assessment here complained of arose upon the re-assessment.

The appellee contends that his bill stated grounds for relief in equity and was substantially the same as the bill in the case of *Aldrich* v. *Harding,* 340 Ill. 354. The *Aldrich case* was submitted on demurrer to the bill, which was overruled, and the decree granting the injunction was thereupon entered on the bill taken as confessed. In this case there was also a demurrer to the bill, which was overruled, but instead of permitting the bill to be taken as confessed

the defendant answered it, denying all its allegations of fraud. The evidence went to but two allegations of the bill and tended only to show an over-valuation of the real estate and the appellee's objection thereto before the board of review.

Upon the question of value, Glen C. Crawford, Ben H. Drollinger and Alexander V. Capraro, who qualified as experts, testified for the complainant. The four lots were improved with a three-story apartment building having forty-eight apartments with a total of 144 rooms, not including the bath-room which each apartment contained, built within eight or ten years, which was described as rather modern, of substantial construction, in a neighborhood zoned for three-story apartments. Crawford's judgment was that the value of the building before depreciation was $144,000, and after the deduction of a reasonable depreciation was $122,000 or $123,000, and the value of the lots was $50,000, making a total full fair cash value of $172,000 or $173,000. This estimate of the value of the lots is somewhat at variance with his opinion of the front-foot valuation. The lots fronted a total of 144 feet on Washington boulevard and extended back 200 feet along Kenilworth avenue. Crawford testified that he fixed the value of the lots at $375 to $500 a front foot of the frontage on Washington boulevard. At $375 the frontage of 144 feet amounts to $54,000, which is $4000 above the estimate of the witness. At $500 the value is $72,000. Capraro was of the opinion that the building was worth between $135,000 and $140,000 on April 1, 1928, and the lots $350 or $400 a foot, depending upon what one could get for them. Upon Crawford's testimony the value of building and lots, considering the lots to have been worth $500 a front foot, as his testimony permitted, and the building $123,000, was $195,000. Upon Capraro's testimony it was $197,600. Drollinger's opinion, based upon cost of construction, was that the building was worth $145,000 on April 1, 1928, and the lots $375 a

front foot, a total of $199,000; that men experienced in appraisal work might differ with him as to the value of the building; that some might value it by taking the floor area or its cubical contents, and that there might be a variance of $10,000 or $15,000 in value.

For the defendant, three witnesses, who were also qualified, testified as experts—Walter R. Kuehnle, Martin M. Worsek and V. B. Carlson. Kuehnle considered the land value to be between $65,000 and $66,000 and the building value between $171,000 and $172,000, a total value between $237,000 and $238,000. Carlson considered the land value as $65,731 and the building value as $171,608, a total of $237,339. Worsek considered the land value as $380 a front foot. He did not testify as to the building value.

Thus the witnesses in this case showed that the value of the real estate here involved lay somewhere between $197,600 and $237,339. The value fixed by the board of assessors and confirmed by the board of review, of $257,-731, was therefore excessive to a minimum extent of about $20,000. The evidence failed to disclose how the mistake occurred. The evidence showed merely an excessive valuation. The appellee sought to make a correction of the mistake by filing a complaint before the board of review and presenting evidence showing that the valuation was excessive. He was represented before the board by Joseph C. Cowen. The board heard the evidence, which was presented for the appellee through the testimony of Capraro, Drollinger and the appellee, no testimony in support of the valuation having been presented. After the hearing of the evidence the file was marked "Confirmed." In the trial of this chancery case the witness Cowen merely testified generally that in the hearing before the board of review he presented evidence of Capraro, Drollinger and Kinderman "showing that the assessed valuation as assessed by the board of assessors was too high." Charles V. Barrett made the statement to

Cowen that he could do nothing in the particular case, because if the unit value were changed it would mean the "knocking out" of the entire re-assessment, which, he said, because of public policy he could not do and that it would be "up to the courts" to pass upon the question. The board gave the appellee no further notice of the confirmation of the assessment.

Thus the evidence here showed that a mistake had occurred in the valuation of the appellee's property which was shown to the board of review, and the board was asked to correct it but declined to do so. The remark made by Barrett to Cowen at the hearing before the board of review finds a probable explanation in the testimony of the witness Carlson, who was a deputy assessor but who did not make the assessment in 1928 here complained of. He testified as to his method of fixing the value of the apartment building as follows: "I arrived at the figure of $171,608 by applying the system as laid down by the State Tax Commission under rules 14 and 15, using the classified factors and the unclassified factors. I computed the square feet in the building at 44,865 square feet. I valued the square feet area at $4.25 a square foot and then gave a depreciation of the building and arrived at a sound value of $171,608. * * * I assessed it for the year 1929 and I found 44,865 square feet correct. * * * Our original record card showed 46,545 square feet." Rules 14 and 15 were put in evidence by the defendant. No contention is made that the value of $4.25 a square foot area was not properly applied under the rules. It thus appeared in this case that for the 1928 assessment a mistake had been made in computing the total number of square feet to which the value of $4.25 should be applied, the estimate upon which the value was figured being 46,545 square feet while the fact was there were only 44,865 square feet. But that mistake does not appear to have been called to the attention of the board of review, and the statement of Barrett amounted

to no more than an affirmance of the method of determining value adopted under rules 14 and 15 as against the method used by the witnesses Capraro and Drollinger in reaching their estimates of value. No doubt, had the mistake in computing the area in square feet been called to the attention of the board the mistake would have been corrected. The attack before the board must have been, as it is here, merely that the system of valuation adopted and applied had resulted in an excessive valuation. The board in confirming the assessment merely adhered to its system. There is no evidence before us from which we could enter upon a discussion of the propriety of the rules adopted for, and system followed in, making the 1928 valuations. The board merely concluded that, apart from the mistake, which occurred because of the mistake in the estimate of area, which does not appear to have been then known, the system adopted had resulted in a correct valuation and so confirmed the assessment. To what extent it was justified in relying upon the system of valuation applied is indicated by the narrowness of the margin between the valuations made in this case by Carlson and Kuehnle of building and lots at about $237,000 and the valuation for taxation of $257,731. When it is considered that the figure used in making the valuation for assessment was excessive by 1680 square feet, resulting in adding, by mistake, $7140 to the result which would have otherwise been reached, and leaving the difference between the valuation given by the appellant's witnesses on this trial and the valuation which would have resulted from the application by the board of assessor's square-foot price to the number representing correctly the area in square feet, less than $14,000.

We cannot see from this record that the failure of the board of review to recede from its rule or to correct the mistake in area, which was not called to its attention, was any evidence of fraud. There was here shown merely an

error of judgment, resulting in a comparatively small over-valuation. For an excessive or unequal assessment, where the complaint is not fraud but an error of judgment, merely, the sole remedy is an application to such agencies as have been provided for hearing the complaint. The courts, in the absence of fraud, have no power to review or determine the valuation of property fixed by the proper officers for purposes of taxation. (*Hettler Lumber Co.* v. *Cook County,* 336 Ill. 645.) Where a bill in a court of equity to enjoin the collection of a tax alleges over-valuation of the complainant's property by the fraudulent act of the assessing officer, the complainant must prove such over-valuation and also that it was made from some corrupt or illegal motive, or that the assessment was so grossly excessive as to be of itself evidence of fraud, and such proof must be clear and convincing. He must also show that he has been diligent in pursuing his remedy to have the assessment corrected by the board of review or that he was prevented from pursuing such remedy by fraud, accident or mistake. (*People* v. *Hart,* 332 Ill. 467.) In this case the appellee proved an excess valuation, not, however, so gross as to be itself evidence of fraud, his complaint thereof to the board of review, and the action of the board of review, after hearing, confirming the assessment. The appellee failed to produce any evidence tending to show more than a mistake of judgment, either on the part of the assessing board or the board of review.

The decree was erroneous. It will be reversed and the cause will be remanded to the superior court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*