(No. 21081.

6922 JEFFERY APARTMENT BUILDING CORPORATION, Appellee, *vs.* GEORGE F. HARDING, County Collector, Appellant.

*Opinion filed February 19, 1932.*

JOHN A. SWANSON, State's Attorney, JOHN E. PEDDER-SON, LOUIS H. GEIMAN, and JAMES L. HENRY, (HAY-DEN N. BELL, of counsel,) for appellant.

ERWIN E. COWEN, and ISADOR BECKER, (EDWARD MC-TIERNAN, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The 6922 Jeffery Apartment Building Corporation filed a bill in the superior court of Cook county to enjoin the treasurer and *ex-officio* collector of that county from collecting a part of the general taxes levied upon the real property of the complainant for the year 1928. The defendant answered the bill, and the cause was referred to a master in chancery, who, after hearing the evidence, made a report recommending a decree enjoining the collection of the assailed portion of the taxes. Objections and exceptions to the report were overruled and a decree in conformity with the master's recommendation was entered. From that decree the defendant prosecutes this appeal.

It is alleged in the bill that the State Tax Commission ordered a re-assessment of all real property in Cook county for the year 1928; that under the system of valuation adopted for the re-assessment, the unit of value was so unreasonable and excessive as to place an unjust and inequitable value upon land; that the complainant owns one and one-half lots, improved by a building containing thirteen apartments having a total of seventy-eight rooms; that on April 1, 1928, the fair cash value of the property was $250,000; that by the system of valuation employed by the board of assessors, the land and building were assessed for

the year 1928, at $121,069, which represented thirty-seven per cent of the full value; that the complainant was unable to ascertain the value placed upon its property by the board of assessors until after the assessment books had been delivered to the board of review; that a complaint against the assessment was then filed with the latter board; that at the time fixed for the hearing upon the complaint, an agent of the complainant appeared before the board prepared to substantiate the fact that the assessment upon its property was fraudulent, grossly unjust and inequitable, and that, after several postponements of the hearing, the board adjourned without granting any relief to the complainant.

Other allegations of the bill are that, upon the assessed value placed on the complainant's property by the board of assessors, taxes for the year 1928, amounting to $6235.36 were extended; that the county collector demanded this sum, but that the complainant paid him only $4580 representing thirty-seven per cent of the fair cash value of the property and offers to pay such additional sum as the court may find to be just. The concluding allegations of the bill are that the tax levied is oppressive, discriminatory, confiscatory and fraudulent and imposes upon the complainant a greater proportion of the public burden than is borne by the owners of similar property in the State, in contravention of the State and Federal constitutions.

The defendant in his answer avers that the board of assessors, in fixing the value of the complainant's property and the board of review in confirming the valuation exercised their honest and best judgment and that the valuation is fair and free from fraud.

The evidence discloses that the board of assessors fixed and the board of review confirmed the full value of the appellee's land at $31,050, and of the building at $296,160, making a total of $327,210, and that the assessed value of land and building was placed at thirty-seven per cent of this total or $121,069. The taxes extended upon the as-

sessed value of the property amounted to $6235.06, of which the appellee paid $4580.

The questions to which the appellee directed its evidence are an excessive valuation of its property by the board of assessors and the failure of the board of review, upon complaint, to reduce that valuation. Two expert witnesses testified that the building in question had been cheaply constructed; that it contained 440,008 cubic feet; that the reproduction cost would be forty-five cents per cubic foot, and that on April 1, 1928, it was worth $198,000. A third witness testified that, acting in behalf of the appellee, he filed a complaint against the assessment before the board of review; that, pursuant to notice, he appeared before the board with a real estate expert to support the complaint; that a brief hearing was given and several postponements followed; that finally a member of the board announced that it was impossible for him to hear such matters, but that he would take the complaint under advisement, and that, in the absence of action upon the complaint, the bill in the present case was filed.

Three witnesses, qualified by experience to appraise the value of land and buildings, were called by the appellant. It appeared from their testimony that the building was erected in 1927, and that the materials used in its construction were good. They found that the building contained 448,188 cubic feet and the first witness fixed the cost at sixty-one and four-tenths cents, the second at sixty-two cents and the third at sixty cents per cubic foot. The first and third witnesses found the fair cash market value of the building on April 1, 1928, to be $273,394 and $268,912 respectively. The second witness did not extend his computation beyond the cost per cubic foot. If he had done so, he would have fixed the value of the building on April 1, 1928, at $277,896.

The superior court found that on April 1, 1928, the full fair cash value of the ground and building was $252,814;

that the assessed value of the whole property, land and building, based on such full value, should have been fixed at $93,541, and that the assessed value to the extent that it exceeded the latter sum was fraudulent and void. The court permanently enjoined the collection of the taxes extended upon such excess valuation.

Section 1 of article 9 of the constitution requires the value of property for taxation "to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." The power to impose burdens and to raise money is a legislative power, and may be exercised only by or under the authority of the legislature. (*People* v. *Sweitzer,* 339 Ill. 28; *Meriwether* v. *Garrett,* 102 U. S. 472; *Rees* v. *City of Watertown,* 86 id. 107; *People* v. *Millard,* 307 Ill. 556; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9; *Keokuk Bridge Co.* v. *People,* 185 id. 276). The persons elected or appointed, pursuant to section 1 of article 9 of the constitution, to ascertain the value of property for the purposes of taxation, are exclusively invested with that power and courts may not exercise it. By the Revenue act of 1898 (Cahill's Stat. 1931, p. 2366; Smith's Stat. 1931, p. 2427) the power to value property for purposes of assessment, in counties having a population of two hundred fifty thousand, is vested, in the first instance, in the board of assessors, and later, upon review, in the board of review. Section 23 of the act provides that the board of assessors shall meet on the first Monday of June in each year for the purpose of revising the assessment of real property, and that at such meeting the board, either upon the application of a tax-payer or upon its own motion, shall revise and correct the assessment as shall appear to it to be just. By section 34 the board of review is required to meet on or before the third Monday in June of each year for the purpose of revising the assessment of property. The fourth paragraph of section 35 provides that on complaint in writing that

any property is incorrectly assessed, the board of review shall review the assessment and correct it, as shall appear to be just. For an excessive or unequal assessment, where the complaint is not fraud but an error of judgment merely, the sole remedy is an application for an abatement to such statutory agencies as have been provided for hearing the complaint. *Kinderman* v. *Harding,* 345 Ill. 237; *Hettlcr Lumber Co.* v. *Cook County,* 336 id. 645; *Hulbert* v. *People,* 189 id. 114; *Keokuk Bridge Co.* v. *People,* 145 id. 596; *Buttenuth* v. *St. Louis Bridge Co.* 123 id. 535; *People* v. *Lots in Ashley,* 122 id. 297; *Humphreys* v. *Nelson,* 115 id. 45.

Under the foregoing constitutional provision the courts, in the absence of fraud, have no power to review or determine the value of property fixed by the proper officers for purposes of taxation. (*Kinderman* v. *Harding, supra; Hettler Lumber Co.* v. *Cook County, supra; Hulbert* v. *People, supra; Burton Stock Car Co.* v. *Traeger, supra; Keokuk Bridge Co.* v. *People, supra; Republic Life Ins. Co.* v. *Pollak,* 75 Ill. 292; *Spencer & Gardner* v. *People,* 68 id. 510). It is only where a valuation has been fraudulently made that it is subject to judicial review. (*Kinderman* v. *Harding, supra; People* v. *Sweitzer, supra; Heidenway* v. *Harding,* 336 Ill. 606; *County of Cook* v. *Columbia Ins. Co.* 329 id. 189; *Keokuk Bridge Co.* v. *People, supra; Beidler* v. *Kochersperger,* 171 Ill. 563; *People* v. *Lots in Ashley, supra; Ottawa Glass Co.* v. *McCaleb,* 81 Ill. 556; *Republic Life Ins. Co.* v. *Pollak, supra; Spencer & Gardner* v. *People, supra*). Where a bill in a court of equity to enjoin the collection of a tax alleges over-valuation of the complainant's property by the fraudulent act of the assessing officer, the complainant must prove such over-valuation and also that it was made from some corrupt or illegal motive, or that the assessment was so grossly excessive as to be of itself evidence of fraud, and such proof must be clear and convincing. He must also show that he

has been diligent in pursuing his remedy to have the assessment corrected by the board of review or that he was prevented from pursuing such remedy by fraud, accident or mistake. *Kinderman* v. *Harding, supra; People* v. *Hart,* 332 Ill. 467.

The appellee makes no complaint of the valuation of its parcel of ground by the board of assessors and the controversy in this case arises solely with respect to the valuation of the building. The witnesses for the appellee testified that the building contained 440,008 cubic feet and that it would cost forty-five cents per cubic foot to build it, and hence found the value of the building to be $198,000. The appellant's witnesses found that the building contained 448,188 cubic feet and that it would cost from sixty to sixty-two cents per cubic foot to erect it. Their valuations of the building ranged from $268,912 to $277,876. The valuation of the building by the board of assessors, confirmed by the board of review, was $296,160. The difference between the highest valuation placed upon the building by a witness called by the appellant and that fixed by the board of assessors was therefore $18,284. It appears from the cross-examination of one of the appellant's witnesses, however, that the board of assessors took 474,616 cubic feet as the basis of calculation for the year 1928. The excess of 26,428 cubic feet above the number adopted by the witnesses for the appellant, at sixty-two cents per cubic foot, amounts to $16,385.36 and absorbs substantially the difference to which reference has been made. So far as the evidence is concerned, any one of the three statements of the number of cubic feet in the building may be correct and while there is a substantial variance between the cost per cubic foot fixed by the witnesses for the respective parties, yet we cannot presume that the board of assessors acted fraudulently in placing its valuation upon the building. If it erred in the number of cubic feet and the rate per cubic foot, it was an error of judgment merely. The

over-valuation was comparatively small and in no event was it so grossly excessive as to evince fraud or some corrupt or illegal motive in the making of it.

The appellee, however, argues that, apart from the excessive valuation of the building, the action of the member of the board of review in refusing, upon the appellee's complaint, to reduce the assessed value of the building is in itself evidence of fraud. It is alleged in the bill that, after the appellee caused a complaint against the assessment upon its building to be filed with the board of review, it appeared, through its agents, before the board to establish the fact that the assessment was fraudulent; that after several postponements the board adjourned without granting the appellee a hearing and that a member of the board publicly stated that owing to the financial condition of the city of Chicago and the fact that no taxes had been collected for two years, it was impossible to change or modify the system of valuation adopted and the matter would have to be adjusted by the courts. The testimony in support of these allegations was that the attorney for the appellee appeared before the board with an expert on values of real property; that after a hearing several postponements followed at the conclusion of which a member of the board stated that it was impossible for him to hear "these tax matters," but that he would take the particular complaint under advisement, and that the appellee thereafter filed the bill in the present case. The complaint before the board of review was not that the board of assessors had taken as factors in determining the value of the building an excessive number of cubic feet or an excessive rate per cubic foot. If such a complaint had been made and evidence had been offered to sustain it, the presumption is that the board of review would have reduced the valuation placed upon the building by the board of assessors. Instead of pursuing such a course, the appellee, by its bill, attacked the rule or system adopted for the valuation of buildings. No evidence was

offered to show that the operation of that rule or system resulted in an unjust or excessive valuation. In this situation, the board adhered to its uniform plan and practice. The failure or refusal of the board to recede therefrom and to reduce the valuation of the appellee's building upon grounds or for reasons not called to its attention was not evidence of fraud.

The decree is reversed and the cause is remanded to the superior court with directions to dismiss the bill.

*Reversed and remanded, with directions.*