(No. 21001.—

JAMES E. BISTOR *et al.* Appellants, *vs.* JOSEPH B. Mc-
DONOUGH, County Collector, Appellee.

*Opinion filed April 8, 1932—Rehearing denied June 14, 1932.*

WATKINS, TENHOOR & GILBERT, for appellants.

JOHN A. SWANSON, State's Attorney, JOHN E. PEDDERSON, and LOUIS H. GEIMAN, (HAYDEN N. BELL, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

James E. Bistor and more than five thousand other owners of real property joined in a bill of complaint in the circuit court of Cook county against Joseph B. McDonough, county treasurer and *ex-officio* collector, to enjoin him from seeking the recovery of judgment for the general taxes levied on the lots and parcels of land of the complainants for the year 1929 and from offering to sell or making sale of such lots and parcels to satisfy those taxes. The defendant filed a demurrer to the bill, the demurrer was sustained and the bill was dismissed for the want of equity. From that decree, the complainants prosecute this appeal.

It is alleged in the bill that the board of assessors and the board of review of Cook county and the Tax Commission of Illinois, during a long period of years, and particularly in the year 1929, deliberately, fraudulently and illegally omitted to assess or under-assessed personal property; that in consequence the constitutional provision requiring the uniform assessment of property according to its value was ignored, personal property was relieved of a part of its share of the burden of taxation and real estate was compelled to bear that part in addition to its proportionate share of the

annual tax levies; that the board of assessors, for the year, 1929, made a total assessment of $751,659,685 on personal property in Cook county; that the board of review thereafter fraudulently reduced this total, for the particular year to $675,907,085; that the total assessment upon real estate in Cook county for the year 1929, was $3,431,242,182; that by these assessments eighty-three and one-half per cent of the burden of taxation in Cook county for the year 1929 was placed upon real estate and sixteen and one-half per cent upon personal property; that the board of assessors and the board of review knew that on April 1, 1929, the value of real estate in Cook county was approximately ten billion dollars and of personal property thirty billion dollars, and that it was the duty of these boards to place approximately twenty-five per cent of the total assessment upon real and seventy-five per cent on personal property, but that they deliberately and fraudulently refused to make such a division and apportionment of the tax burden.

Additional allegations of the bill are that these boards failed to place an adequate value on the personal property of many individuals, banks, estates and corporations whose assets, inventories and stocks of goods were available to them, and that in the year 1929, and for years prior thereto, they assessed the personal assets of the estates of decedents and other estates at not more than five per cent of their known value; that the board of assessors and the board of review knew that the assessment upon personal property was grossly inadequate and represented only a fraction of the value of such property in Cook county on April 1, 1929; that the action of these boards respecting the assessment of personal property was a part of their plan to impose upon real estate a tax burden in excess of that which it equitably and under the rule of uniformity should be compelled to bear.

It is further alleged that upwards of 43,000 written complaints of excessive assessments upon as many parcels of

real estate were filed with the board of review in the year 1929, but only 1600 of them were heard, and the board refused to hear the remainder; that in 1927, over 35,000 and in 1928 more than 100,000 similar complaints were filed, but in the former year only a small number and in the latter year none of the complaints were heard; that the Illinois Tax Commission was petitioned to grant relief to the complainants and other real estate tax-payers from the assessment of 1929, but that the commission refused to order the board of assessors and the board of review of Cook county to make a new assessment in conformity with the constitutional requirement of uniformity, and that the complainants knew that any appeal to the board of assessors, the board of review or the State Tax Commission to correct their assessments would be futile.

Concluding allegations of the bill are that the assessment upon each parcel of the complainants' real estate includes a portion of the assessment that should have been levied upon personal property; that each complainant offers to pay in taxes such sum as the value of his real estate bears to the value of all taxable property in the county uniformly assessed; that the defendant has threatened to collect the taxes extended against the real estate of the complainants by seizure, levy and sale of their real and personal property and that he will do so unless enjoined.

The appellants neither charge that real property was omitted from the assessment, nor that the valuations placed upon such property were excessive. They allege, on the contrary, that the real property in the county, taken as a whole, was assessed slightly above one-third of its actual value. No claim is made that the assessments upon their parcels of real estate are not uniform and fair as compared with other assessments of real property. The appellants contend, however, that the board of assessors and the board of review of Cook county, in assessing property for purposes of taxation, discriminated in favor of personal and against

real property; that the assessments upon the lots and parcels of real estate of the appellants are therefore void altogether or at least to the extent of the discrimination against such lots and parcels; that the appellants have no adequate remedy at law and hence that they may invoke the interposition of a court of equity to prevent the collection of the discriminatory taxes levied upon their real estate. The appellee, on the contrary, contends that under the State constitution the power or authority to assess property for taxation is vested exclusively in assessors elected or appointed in the manner provided by law; that where an assessment is made by such officers, no court has jurisdiction over it in the absence of fraud, nor in case of fraud unless the tax-payer has first exhausted his remedy before the assessing and reviewing tribunals; that if the reviewing body or authority fails or refuses to act, the tax-payer must, by *mandamus*, compel action before a judicial question can arise, and necessarily before any court is open to him, and that, in any event, the bill fails to show facts from which the court can determine whether the alleged omitted personal property was taxable.

Section 20 of article 8 of the constitution of 1818 provided "That the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession." Upon the same subject, section 2 of article 9 of the constitution of 1848, read: "The General Assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property; such value to be ascertained by some person or persons to be elected or appointed in such manner, as the General Assembly shall direct, and not otherwise." The pertinent part of section 1 of article 9 of the present constitution provides: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a

tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." * * * Under our successive constitutions uniformity of taxation has been and is a mandate to the taxing authorities and lies at the foundation of all taxing power. (*People* v. *Orvis,* 301 Ill. 350). This rule of uniformity requires that one person shall not be compelled to pay a greater proportion of the taxes, according to the value of his property than another. (*Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229; *Chicago and Northwestern Railway Co.* v. *Boone County,* 44 id. 240). Uniformity in taxing implies equality in the burden of taxation; and this equality can not exist without uniformity in the basis of assessment, as well as in the rate of taxation. *Greene* v. *Louisville and Interurban Railroad Co.* 244 U. S. 499, 501.

Section 1 of article 9 of the constitution requires the value of property for taxation "to be·ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise." The power to impose burdens and to raise money is a legislative power, and may be exercised only by or under the authority of the legislature. (*Jeffery Building Corp.* v. *Harding,* 347 Ill. 336; *People* v. *Sweitzer,* 339 id. 28; *Meriwether* v. *Garrett,* 102 U. S. 472; *Rees* v. *City of Watertown,* 86 id. 107; *People* v. *Millard,* 307 Ill. 556; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9; *Keokuk Bridge Co.* v. *People,* 185 id. 276). The persons elected or appointed, pursuant to section 1 of article 9 of the constitution, to ascertain the value of property for the purposes of taxation, are exclusively invested with that power and courts may not exercise it.

By the Revenue act of 1898 (Cahill's Stat. 1931, p. 2366; Smith's Stat. 1931, p. 2427) the power to value property for purposes of assessment, in counties having a popula-

tion of two hundred fifty thousand, is vested, in the first instance, in the board of assessors, and later, upon review, in the board of review. Section 23 of the act provides that the board of assessors shall meet on the first Monday of June in each year for the purpose of revising the assessment of real property, and that at such meeting the board, either upon the application of a tax-payer or upon its own motion, shall revise and correct the assessment as shall appear to it to be just. By section 34 the board of review is required to meet on or before the third Monday in June of each year for the purpose of revising the assessment of property. The fourth paragraph of section 35 provides that on complaint in writing that any property is incorrectly assessed, the board of review shall review the assessment and correct it, as shall appear to be just.

Under section 1 of article 9 of the constitution, the courts, in the absence of fraud, have no power to review the valuation of property made by the proper officers for purposes of taxation. (*Jeffery Building Corp.* v. *Harding, supra; Kinderman* v. *Harding,* 345 Ill. 237; *Hettler Lumber Co.* v. *Cook County,* 336 id. 645; *Hulbert* v. *People,* 189 id. 114; *Burton Stock Car Co.* v. *Traeger, supra; Keokuk Bridge Co.* v. *People, supra; Republic Life Ins. Co.* v. *Pollak,* 75 Ill. 292; *Spencer & Gardner* v. *People,* 68 id. 510). For an excessive or unequal assessment, where the complaint is not fraud but an error of judgment merely, the sole remedy is an application for an abatement to such statutory agencies as have been provided for hearing the complaint. *Jeffery Building Corp.* v. *Harding, supra; Kinderman* v. *Harding, supra; Hulbert* v. *People, supra; Hettler Lumber Co.* v. *Cook County, supra; Keokuk Bridge Co.* v. *People, supra; Buttenuth* v. *St. Louis Bridge Co.* 123 Ill. 535; *People* v. *Lots in Ashley,* 122 id. 297; *Humphreys* v. *Nelson,* 115 id. 45.

The statutory provisions concerning the tax-payer's right to have the assessors' valuation of his property for

taxation reviewed by the board of review are intended to provide adequate protection against fraudulent or oppressive assessments. It is only where a valuation of taxable property has been fraudulently made and the complaining tax-payer has not waived his right to relief, that the assessment is subject to judicial review. The jurisdiction of a court of equity may not be invoked against a fraudulent assessment of taxable property where the owner has failed to insist upon a legal remedy which would have afforded him complete relief. He must show that he has been diligent in pursuing his remedy to have the assessment corrected by the board of review or that he was prevented from pursuing such remedy by fraud, accident or mistake. (*Jeffery Building Corp.* v. *Harding, supra; Kinderman* v. *Harding, supra; People* v. *Hart,* 332 Ill. 467; *Beidler* v. *Kochersperger,* 171 id. 563; *Kinley Manf. Co.* v. *Kochersperger,* 174 id. 379). Upon the neglect or refusal of the board to review the assessment, the owner's remedy is *mandamus* to compel the board to act, and he must pursue that remedy before seeking relief by injunction. In *New Haven Clock Co.* v. *Kochersperger,* 175 Ill. 383, taxes had been extended against the clock company upon a fraudulent and highly excessive assessment. The company filed with the county board, the reviewing tribunal at the time, an application for a revision of the assessment and introduced evidence in support of its application. The board refused to act, and the company, instead of asking for a writ of *mandamus* to compel the board to perform its statutory duty, sought an injunction to restrain the collection of the excess portion of the taxes. The defendant's demurrers to the bill were sustained and the bill was dismissed for the want of equity. In affirming the decree, this court said, at page 394: "Fraud is a familiar ground of equity jurisdiction, and if an assessment is fraudulent, equity should relieve against it where the tax-payer has been diligent in seeking the remedy which the statute affords. In matters of revenue it is important

that all questions should be speedily settled, and the taxpayer should first seek the remedy given by the statute, which it is presumed will be sufficient. If he fails to do so it is his own neglect or folly. The remedy against fraud is of an equitable nature, and should be applied where the injured party has been diligent for his own protection, but we think it should be withheld in a case of this kind, where the party has failed to insist upon a legal right which probably would have given full relief."

The reason for adopting the fair cash value as the standard for the valuation of property is to afford a convenient means to attain the end of equal taxation. If the standard be systematically departed from with respect to a certain class of property, while applied to other property, it frustrates the object it was designed to accomplish. The duty to assess at full value, for that reason, cannot be supreme in all cases, but must yield whenever it is necessary to avoid the defeat of its own purpose. (*Greene* v. *Louisville and Interurban Railroad Co.* 244 U. S. 499). Where it is impossible to secure both the standards of the true value and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. (*Sioux City Bridge Co.* v. *Dakota County, Nebraska,* 260 U. S. 441; *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164). The appellants, therefore, had the right to an equal and uniform assessment of their parcels of real estate with all other property, in proportion to value, and they could not be deprived of that right without an opportunity to protect it and to be heard in its support. (*Brinkerhoff-Faris Co.* v. *Hill,* 281 U. S. 673). The failure, however, to avail themselves of their legal remedies denies them recourse to a court of equity for relief.

This question was determined in *Keokuk and Hamilton Bridge Co.* v. *Salm,* 258 U. S. 122. The company owned a bridge across the Mississippi river. The portion of the bridge within this State was assessed as real estate and the

company sought to enjoin the collection of the taxes extended because its property had been deliberately assessed at one hundred and fifty per cent of its actual value, whereas the property of other corporations and individuals had been assessed at only forty per cent of such value, and it was claimed, in consequence, that the company was deprived of its property without due process of law and was denied the equal protection of the laws in violation of the fourteenth amendment to the Federal constitution. The bill was dismissed by the Federal District Court on the ground that the complainant had a plain, adequate and complete remedy at law. In affirming the decree, the Supreme Court of the United States said at pages 124 and 125: "The provisions relating to the assessment and taxation of real estate apply to the assessment and taxation of bridge structures like that of the appellant. (Hurd's Revised Statutes of Illinois, 1919, c. 120, sec. 354). Every such assessment made by the county assessors is subject to revision by them. (Secs. 319, 320). Moreover, upon complaint in writing that an assessment is incorrect, a board of review is required to give a hearing, and to correct the assessment 'as shall appear to be just.' (Sec. 329; *Standard Oil Co.* v. *Magee,* 191 Ill. 84). Payment of taxes as finally assessed and extended against real estate is enforced, in the first instance, not by distraint or levy, but by legal proceedings. (Secs. 185-193). An application is made by the collector to the county court for judgment against the property. Compare *Keokuk and Hamilton Bridge Co.* v. *People,* 145 Ill. 596; 161 id. 514; 167 id. 15; 176 id. 267. The proceeding in the county court is a civil suit for the collection of a debt. (*People* v. *St. Louis Merchants Bridge Co.* 282 Ill. 408). The owner may appear and defend on any legal ground; among others, that the assessment was deliberately or fraudulently discriminatory and that, hence, the tax is void. (*People* v. *Keokuk and Hamilton Bridge Co.* 287 Ill. 246; 295 id. 176). From the judgment of the county court an appeal may be taken to

the Supreme Court of the State upon giving a bond to pay the amount of the assessment and costs; and the appeal will operate as a *supersedeas* if the appellant deposits with the county collector an amount of money equal to the amount of the judgment and costs. If upon final hearing judgment for sale of the lands for taxes is refused, the deposit is returned by the collector to the appellant. (Sec. 192). Moreover, where it is claimed that a tax is void because of over-valuation which is fraudulently discriminatory, the courts of the State will grant relief in equity, if the plaintiff has sought correction from the board of review and failed to secure redress. (*Sanitary District* v. *Young,* 285 Ill. 351, 367). Here the alleged invalidity consists wholly in discriminatory over-valuation; and, so far as appears, appellant did not even apply to the board of review to correct the assessment." Likewise, in the case at bar, it does not appear that the appellants asked the board of review to revise the assessments upon their real estate. While it is alleged in the bill that a considerable number of written complaints of excessive assessments upon real estate were filed with the board of review, yet there is no allegation in the bill that the appellants filed any of these complaints or that they ever applied to the board for a correction or reduction of the assessments upon their real property.

The contention that the assessments upon the lots and parcels of real estate of the appellants are void because there was discrimination in favor of personal property is not tenable. It has been the uniform rule in this State that neither the omission to assess nor the under-valuation of one kind or class of property will invalidate the assessments upon other property in the same jurisdiction. (*Chicago, Burlington and Quincy Railroad Co.* v. *Frary,* 22 Ill. 34; *Schofield* v. *Watkins,* id. 66; *Merritt* v. *Farris,* id. 303; *Munson* v. *Minor,* id. 595; *Metz* v. *Anderson,* 23 id. 410; *Dunham* v. *City of Chicago,* 55 id. 357; *DuPage County* v.

*Jenks,* 65 id. 275; *Spencer & Gardner* v. *People,* 68 id. 510; *People* v. *Lots in Ashley,* 122 id. 297; *First Nat. Bank of Urbana* v. *Holmes,* 246 id. 362). This court in *Merritt* v. *Farris,* 22 Ill. 303, at page 312, said: "These taxes are all levied on the assessment made by the township or county assessors. And if his omission to assess property, destroys the equality of the entire tax of the district, it has the same effect upon the State, county and township tax, as the omitted property is liable to be assessed for all of these purposes, and its omission increases the burthen of other tax-payers, to the extent of the amount it would have yielded. The framers of the constitution could not have designed, that such an omission should avoid the tax levied upon the property, which is regularly assessed. They intended to require, and did require, that the law should provide for a uniform mode of assessment and collection, which would not sanction exemptions from the burthens of taxation, and they imposed the duty upon the officers acting under the revenue laws, of executing them fairly and impartially, but it never could have been intended that their omissions should render the whole tax void, and to suspend the collection of the revenue." Again in *Spencer & Gardner* v. *People,* 68 Ill. 510, at page 512, the court declared that "The framers of the constitution could not have contemplated any such consequence as that a tax levy should be void, in case an assessor should happen to omit to assess any taxable property, or should make an incorrect valuation of any property, whereby would be produced the result that every person would not actually pay a tax in proportion to the value of his property." The serious consequences of the doctrine that the omission to assess, or the under-valuation of, taxable property destroys the validity of the assessment upon other property in the same district were stated in *Dunham* v. *City of Chicago,* 55 Ill. 357, at page 361: "But the position that it lies with ministerial officers to defeat the collection of taxes by such omissions, whether made willfully

or from carelessness, is not tenable. Such officers may make themselves amenable to the law, for misconduct in office, but cannot thus stop the wheels of government."

The appellants fail, for another reason, to state a case entitling them to the relief sought. Under Federal and local statutes considerable personal property is exempt from taxation. If the personal property, the omission of which from assessment is the ground of complaint, was exempt from taxation, the board of assessors had no authority to assess it. The appellants were required to allege facts from which it might be determined whether the omitted property was liable to assessment. No description of that property is given and in no instance is its situs or ownership disclosed. The allegations of the bill that the property was liable to taxation were mere conclusions of law and were insufficient. (*People* v. *Board of Review*, 326 Ill. 124; *People* v. *Sellars*, 179 id. 170; *People* v. *Davis*, 112 id. 272; *People* v. *Village of Crotty*, 95 id. 180). In *People* v. *Davis*, 112 Ill. 272, 281, the court said: "Whether property is legally taxable at a particular place is a question of law, and not of fact; and the pleader seeking to charge one with liability because his property is taxable at a particular place, must, therefore, state the facts from which such liability results, as a conclusion of law."

The decree of the circuit court is affirmed.

*Decree affirmed.*