(No. 21966.—

THE PEOPLE *ex rel.* Kilner Fox Thomas, Petitioner, *vs.*
GEORGE F. NIXON *et al.* Respondents.

*Opinion filed October 21, 1933.*

STONE and DEYOUNG, JJ., dissenting.

SCOTT, MACLEISH & FALK, (LESTER L. FALK, and LE-
LAND K. NEEVES, of counsel,) for petitioner.

SCHUYLER, WEINFELD & HENNESSY, and WOLF & LOVE,
(GEORGE W. LENNON, HOMER F. CAREY, and STEPHEN
LOVE, of counsel,) for respondents.

OTTO KERNER, Attorney General, (MONTGOMERY S.
WINNING, of counsel,) *amicus curiæ.*

Mr. JUSTICE JONES delivered the opinion of the court:

There has been filed in this court, upon leave granted,
a petition in the name of the People, on the relation of
Kilner Fox Thomas, a resident and tax-payer of Cook
county, for a writ of *mandamus* commanding George F.
Nixon and Fred W. Brummel, as members of the board

of appeals of Cook county, to convene as such board and to vacate and expunge an order entered by that board on March 22, 1933, ordering a reduction of the assessment on certain classes of buildings in Cook county. The relator and respondents have entered into a stipulation that the sole question to be determined is whether or not the board of appeals had jurisdiction and power to enter the order which relator seeks to have vacated. The cause is submitted on the petition and stipulation.

On March 22, 1933, Thomas Harvatt filed with the board of appeals of Cook county a verified complaint alleging that he is the owner of a certain described lot in Chicago which is improved with a five-room brick bungalow; that the assessment on his bungalow for the year 1931 was excessive; that there was a lack of uniformity in the assessment for the year 1931 on income-producing and commercial property on the one hand, and on cottages, homes, bungalows and two-flat and three-flat buildings on the other hand; that the base price used by the assessor in making the assessment on the latter class of property was excessive and all of such property was assessed too high, and that a revision of the entire assessment of all real estate in Cook county was necessary. The complaint purported to be filed under the provisions of section 34 of the Revenue act of 1898 as amended, and the prayer was "for a revision of the entire assessment, or a part thereof, of the 1931 real estate assessment." Without giving notice to the assessor and without a hearing on the complaint the board of appeals on March 22, 1933, entered the order complained of, by which it directed the assessor of Cook county to revise the assessment on all cottages, bungalows, residences, homes and two-flat and three-flat buildings by reducing the base price on which all assessments of such property was made by fifteen per cent. The relator contends that the board of appeals was without jurisdiction or power to enter the order of March 22, 1933, and that that order is

therefore void. On the other hand, the respondents contend that by section 34 of the Revenue act of 1898 as amended, the board of appeals was invested with jurisdiction and power to make the order.

The question presented in this case requires a consideration of the provisions of the Revenue act of 1898 as amended by an act of the General Assembly approved and in force February 13, 1932. (Laws of 1931-32, Special Sess. p. 65.) By this amendatory law the board of assessors of Cook county was abolished and the powers theretofore exercised by such board were vested in the county assessor. Likewise the board of review of Cook county was abolished and the board of appeals became the successor of the board of review, but all of the powers theretofore conferred upon the board of review were not vested in the board of appeals. Section 34 as amended by the amendatory act reads as follows:

"Sec. 34. The board of review or in counties containing two hundred fifty thousand or more inhabitants the board of appeals shall meet on or before the third Monday in June in each year for the purpose of revising the assessment of property. At such meeting the board of review, or board of appeals, upon application of any tax-payer or, in counties of less than two hundred fifty thousand inhabitants, upon their own motion, may revise the entire assessment or any part thereof of any tax-payer and correct the same, as shall appear to them to be just, but in none of the cases provided for in this act shall the assessment of the property of any person be increased unless such person or his agent, if either be a resident or has a place of business in the county, shall first have been notified in writing and been given an opportunity to be heard. Such meeting may be adjourned from day to day as may be necessary: *Provided,* that the final adjournment of said board of review or board of appeals shall be on or before the seventh day of September except as hereinafter pro-

vided in counties containing two hundred fifty thousand or more inhabitants and that no *per diem* compensation shall be paid any member of said board for services rendered after the date fixed for the final adjournment: *Provided further,* that in the five years next following the completion of a general re-assessment of real property in any county containing two hundred and fifty thousand or more inhabitants, made pursuant to an order of the State Tax Commission such meeting for the purpose of revising the assessment of property shall be held on the Monday following the seventy-fourth day after the assessment books are required to be called for under section 11 of this act, and the final adjournment of such board of appeals shall be on or before the one hundred and fiftieth day after the assessment books are required to be called for under section 11 of this act: *Provided further,* that in such five years the board of appeals at the time and place fixed and upon notice given as in this section provided, may hear complaints and review and correct any such assessments by towns or taxing districts, as the assessment for such towns and taxing district is completed and the books certified to the board of appeals by the assessor without waiting for the completion of the entire assessment of the county. The notice required by this section may provide for a revision and correction at the specified time of one or two or more towns or taxing districts. The board of appeals at least one week before the meeting of such board of appeals to revise and correct the whole or any part of such assessment shall publish a notice of the time and place of its meeting for such purpose in at least one newspaper of general circulation published in the county, said notice to specify the date and place at which complaints may be filed and the towns or taxing districts the assessments of which will be considered for revision and correction at such time."

The powers and duties of the board of appeals of Cook county are set forth in section 35a, which was added to

the Revenue act by the amendatory act. That section reads as follows:

"Sec. 35a. In counties containing two hundred fifty thousand or more inhabitants the board of appeals in any year shall

"(a) On complaint that any property is over-assessed or under-assessed, or is exempt, review and order such assessment corrected;

"(b) Order the county assessor to correct any mistake or error (other than mistakes or errors of judgment as to the valuation of any real or personal property) in the manner provided in section 35c of this act; and

"(c) Direct the county assessor to assess all property subject to assessment which he has not assessed, for any reason and enter the same upon the assessment books and to list and assess all property, real or personal, that has been omitted in the assessment of any year, or number of years, or if the tax thereon, for which such property was liable from any cause, has not been paid or if any such property, by reason of defective description or assessment thereof, fails to pay taxes for any year or years, in either case the same, when discovered by the board shall be listed and assessed by the county assessor and the board may order the county assessor to make such alterations in the description of real or peronal property as it deems necessary."

The method of procedure and the manner in which the board of appeals shall exercise the power conferred upon it by paragraph (a) of section 35a are set forth in section 35b, which was also added by the amendatory act. Section 35b reads as follows:

"Sec. 35b. In counties containing two hundred fifty thousand or more inhabitants, complaints that any particular property, real or personal, described therein is over-assessed or under-assessed or is exempt may be made by any tax-payer. All such complaints shall be in writing, shall be verified under the oath of the complaining party

and shall be filed with the board of appeals in duplicate. The board of appeals shall forward one copy of each such complaint to the county assessor. In order to affect the assessment for the current year such complaints shall be filed on or before the first day of August, but if the assessment books containing the assessment complained of are not filed with the board of appeals by the twentieth of July, then such complaint shall be filed within ten days after such books are so filed with such board: *Provided,* that in the five years next following the completion of a general re-assessment of real property in any county containing two hundred and fifty thousand or more inhabitants, made pursuant to an order of the State Tax Commission, complaints of assessment of real property for any town or taxing district may be made at the time specified in the notice or notices published by the board of appeals in compliance with section 34 of this act, subject to the conditions that every complaining tax-payer shall have at least seven days after the publication of such notice within which to file such complaint. Complaints relating to real property shall be classified by towns and complaints relating to personal property shall be classified in such manner as the board of appeals, by order duly entered of record, may determine. All classes of complaints shall be docketed numerically, each in its own class, in the order in which they are presented, as near as may be, in books kept for that purpose, which books shall be open to public inspection. Complaints relating to real property shall be considered by towns and complaints relating to personal property shall be heard in their order by classes, in pursuance of the order of the board, heretofore mentioned, until all complaints have been heard and passed upon by the board.

"No hearing upon any complaint shall be held until the person or corporation affected and the assessor who certified the assessment have each been notified and given an opportunity to be heard thereon. The hearing upon any

such complaint shall be open to the public and the board of appeals shall sit together and hear the representations of the parties interested or their representatives and no order for a correction of any assessment shall be made unless both members of said board concur therein and, in such case, an order therefor shall be made in open session and entered of record on the books of the board. In each instance in which an assessment is ordered corrected the board of appeals shall make and sign a brief written statement of the reason for such change and of the manner in which the method used by the assessor in making such assessment was erroneous and shall deliver a copy of such statement to the assessor who certified such assessment. Upon request the board shall hear any tax-payer in opposition to a proposed reduction in any assessment."

Section 34 of the act is general in its terms and its provisions apply to boards of review in counties other than Cook as well as to the board of appeals of Cook county. That section specifies the time that boards of review and the board of appeals shall meet for the purpose of revising the assessment and the time and manner of giving notice of the meetings. It does not purport to detail the powers and duties of boards of review or of the board of appeals in revising the assessment. It simply declares, in general terms, that at the meeting "the board of review, or board of appeals, upon application of any tax-payer or, in counties of less than two hundred fifty thousand inhabitants, upon their own motion, may revise the entire assessment or any part thereof of any tax-payer and correct the same, as shall appear to them to be just." This clause has the effect of limiting the board of appeals, in revising the assessment, to action taken on the complaint of a tax-payer. Section 35 of the act details the powers and duties of boards of review in revising the assessment, and sections 35$a$, 35$b$, 35$c$, 35$d$, 35$e$, 35$f$, 35$g$ and 35$h$ detail the powers and duties of the board of appeals in performing that function. Sec-

tion 34 of the act does not set out the nature of the complaint which may be filed before the board of appeals and on which it may act, and does not set out the procedure to be followed by the board and its power in acting upon such complaint, other than in very general terms. To ascertain the powers and duties of boards of review in revising an assessment it is necessary to read sections 34 and 35 of the act together; and to ascertain the powers and duties of the board of appeals in performing such function it is necessary to read section 34 and sections 35a to 35h, inclusive, of the act together. In construing statutes the intention of the legislature must be determined from a consideration of the whole and every part of the act under consideration taken and read together. *Crozer* v. *People*, 206 Ill. 464; *Uphoff* v. *Industrial Board*, 271 id. 312.

It is necessary to refer to section 35b to ascertain the nature of the complaint that may be filed before the board of appeals and on which it may act and the procedure to be followed by the board in acting on the complaint. Section 35b provides that complaints "that any particular property, real or personal, described therein is over-assessed or under-assessed or is exempt may be made by any taxpayer" to the board of appeals, such complaint to be in writing and verified and to be filed in duplicate; that public hearings shall be had on such complaints, but that no hearing shall be held on any complaint until the person or corporation affected, and the assessor, have been notified and given an opportunity to be heard. It is clear that by these provisions of sections 34, 35a and 35b it was the intention of the General Assembly to define and limit the power of the board of appeals in revising assessments to cases of tax-payers who have filed complaints as to particular parcels of real estate or personal property pursuant to section 35b and in no other cases. Section 35b is definite on this proposition. The provisions of this section manifest

an intention upon the part of the General Assembly to limit the power of the board of appeals in acting on a complaint of a tax-payer, to a revision of the assessment on the particular property described in the complaint, because they require a complaint that "particular property * * * described therein" has been over-assessed or under-assessed or is exempt, and require persons and corporations that would be affected by a revision of the assessment to be notified and given an opportunity to be heard.

Section 34 empowers the board of appeals to revise and correct the entire assessment of any tax-payer or any part thereof. It contains no authority to revise the entire assessment in a taxing district or the assessment on a particular class or classes of property. Before the amendatory act of 1932 was passed and approved, the board of review of Cook county, and of all other counties, had by the fifth paragraph of section 35 power to increase or reduce the entire assessment of either real or personal property, or both, or of any class included therein, if the assessment was not made on the proper basis. This power is still vested in boards of review by that paragraph of section 35 but there is no similar paragraph in any of the sections prescribing the powers and duties of the board of appeals, and this leads to the conclusion that it was not the intention of the legislature to confer any such power on the board of appeals.

It is clear that in revising the assessment of any property because it is over-assessed, under-assessed or exempt, the board of appeals may act only upon the complaint of a tax-payer. Such complaint, by the provisions of section 35b, must describe the particular property the assessment of which is sought to be revised, and the hearing and action of the board must be on the complaint after notice given to the assessor and all persons and corporations that would be affected by the revision of the assessment of the particular property described in the complaint.

In this case the only particular property described in the complaint filed before the board of review was the lot owned by the tax-payer. The complaint described certain classes of property the assessment on which the complainant alleged was too high, but it did not describe the particular pieces of property in those classes other than the lot owned by the tax-payer. By this complaint the board of appeals was given jurisdiction, after notice and a hearing, to revise the assessment on the property of the complaining tax-payer particularly described in the complaint and no other. On that complaint, without giving notice to the assessor and the persons and corporations to be affected, it entered an order directing the assessor to reduce the assessment on certain classes of property. It had no power or authority, under the statute, to make such order, and the purported order is wholly void.

The writ of *mandamus* as prayed will be awarded.

*Writ awarded.*

Mr. JUSTICE DeYOUNG, dissenting:

The majority of the court declares in its opinion that section 34 of "An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named," approved February 25, 1898, as amended by act approved February 13, 1932 (Laws of Illinois, First, Second and Third Special Sessions, 1931-32, p. 74), specifies the time the board of appeals shall meet for the purpose of revising the assessment of property and the time and manner of giving notice of the board's meetings; that the powers and duties of the board of appeals are prescribed by section 35*a* of the same act, and that the method of procedure and the manner in which the board shall exercise the power conferred upon it by paragraph (*a*) of section 35*a* are set forth in section 35*b*. From these interpretations of the statutory provisions designated the conclusion is drawn that "it was the intention of the General Assembly to define and limit the power of the board of

appeals in revising assessments to cases of tax-payers who have filed complaints as to particular parcels of real estate * * * pursuant to section 35b and in no other cases." The order of the board of appeals, in consequence, was declared void and the writ of *mandamus* sought by the relator was awarded.

It is an established rule in the interpretation of statutes that the intention of the law-giver must be deduced from a view of the whole and of every part of the act under consideration taken and compared together. (*People* v. *Price*, 257 Ill. 587; *People* v. *Henning Co.* 260 id. 554; *Uphoff* v. *Industrial Board*, 271 id. 312). The court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context or, otherwise expressed, it may not give the particular words a significance which would be clearly repugnant to the statute, viewed as a whole, and destructive of its obvious intent. *VanDyke* v. *Cordova Copper Co.* 234 U. S. 188.

The opening sentence of section 34 requires the board of appeals to meet on or before the third Monday in June in each year for "the purpose of revising the assessment of property." This sentence is general, without limitation, and standing alone, authorizes a revision of the assessment against all the taxable property in the county. Its broad language affords ample legal justification for the order of March 22, 1933. The portion of the second sentence which provides that, "At such meeting the * * * board of appeals, upon application of any tax-payer * * * may revise the entire assessment or any part thereof of any tax-payer and correct the same, as shall appear to them to be just," * * * however, is invoked to sustain the view that the power of the board of appeals is restricted solely to a revision of the complaining tax-payer's assessment. Any tax-payer, not necessarily the owner of the property assessed, may make the application, and when made, it may concern one or many particular assessments

for the word "any" sometimes means one or more irrespective of the number. But whatever construction may be placed upon the portion of the sentence quoted, obviously, the extent of the power of the board of appeals can not be determined by excluding from consideration not only the remainder of that sentence but also of the thirty-fourth section of the act.

The remainder of the second sentence reads "but in none of the cases provided for in this act shall the assessment of the property of any person be increased unless such person or his agent, if either be a resident or has a place of business in the county, shall first have been notified in writing and been given an opportunity to be heard." This provision contemplates the increase, after notice and an opportunity for a hearing and upon proof of the requisite facts, of the assessment of a tax-payer other than the one by whom the application was filed. It is conceded that upon the application of a tax-payer, the board of appeals may revise the assessment not only of the applicant, but also of any other tax-payer, by raising the assessment, subject only to the requirement of notice and an opportunity to be heard. The application of one tax-payer either authorizes the board of appeals to revise the assessment of another tax-payer by increasing or reducing it, as the facts warrant, or it gives the board no jurisdiction over the assessment of any tax-payer other than that of the applicant. If, upon the application of one tax-payer, the board of appeals may increase the assessment of another tax-payer who has had notice and an opportunity to be heard, then it necessarily follows that the board may also, when the facts justify it, reduce the assessment of such other tax-payer. The power to increase and decrease, assuming the requirements of due process to have been observed, are correlative and inseparable.

The concluding sentence of the section reads: "The board of appeals at least one week before the meeting

of such board of appeals to revise and correct the whole or any part of such assessment shall publish a notice of the time and place of its meeting for such purpose in at least one newspaper of general circulation published in the county, said notice to specify the date and place at which complaints may be filed and the towns or taxing districts the assessments of which will be considered for revision and correction at such time." The words "such assessment" in this sentence refer to "the assessment of property" in the opening sentence and in the second proviso of the section; and the phrase "the assessment of property," when the whole section is considered, manifestly extends to the assessment of all the property in the county. The purpose of the meeting of the board of appeals is "to revise and correct the whole or any part" of that assessment, and the revision may be made by towns or taxing districts. The right of individual tax-payers to file complaints and the fixing of a time and place therefor do not limit the board's power to revise the whole or any part of the assessment and to make the corrections found to be necessary.

The majority of the court not only excludes from consideration material provisions of section 34, but its review of sections 35a and 35b also is incomplete. Section 35a does not purport to define all the powers of the board of appeals; it merely enumerates certain duties in addition to those imposed by section 34. The assertion that the method of procedure and the manner in which the board of appeals shall exercise the power conferred upon it by paragraph (a) of section 35a are set forth in section 35b is likewise unwarranted. Paragraph (a) requires the board in any year on complaint that "any property" is over or under-assessed or exempt, to review the assessment and order it corrected. "Any property" may well include property, real or personal, of a certain class or type, and is not confined to a specific parcel of real or item of personal property. The complaints to which section 35b has refer-

ence concern "any particular property, real or personal, described therein" and not property generally, the subject matter of paragraph (*a*) of section 35*a*. The application of section 35*b* to complaints respecting the assessment against specific parcels or items of property and not to the revision enjoined by section 34 is emphasized by the provisions of section 35*b* concerning the time of filing complaints, the giving of notice of their filing and the time and order of the hearings thereon. These provisions are more specific and differ in certain essentials from similar provisions of section 34. If, as the majority of the court declares, that section "specifies the time that the board of appeals shall meet for the purpose of revising the assessment and the time and manner of giving notice of the meetings," then the corresponding provisions of section 35*b* are superfluous and wherever they conflict with section 34 are productive of confusion. These difficulties do not arise when section 35*b* is confined to its proper scope. A specification of the requirements of a complaint against the assessment upon a particular parcel of real property and of the proceedings upon such a complaint manifestly does not restrict the powers of the board conferred by other sections of the act. It certainly is not the judicial function to limit the provisions of paragraph (*a*) of section 35*a*, to the extent that it concerns real property, by the interpolation of the qualifying words "particular parcel of" between the words "any" and "property," nor to extend the application of section 35*b* beyond its express terms, thereby eliminating largely the powers conferred upon the board of appeals by section 34. Such changes may only be made by the legislative power.

Section 33 of the Revenue act requires each member of the board of appeals, before entering upon the duties of his office, to take and subscribe an oath fairly and impartially to review the assessment of all property as made; to raise or lower, or direct the county assessor to change

or modify, the assessment as justice may require, and to perform all acts necessary to a full, fair and impartial assessment of all property of every kind, nature and description. Section 38 provides that the board of appeals, on or before a time fixed, shall complete its work and attach to the assessment books an affidavit, signed by at least two members of the board, setting forth, among other things, that the assessed value set down in the proper column opposite each of the several kinds and descriptions of property is, in their opinion, a just and equal assessment for the purposes of taxation. The provision requiring this affidavit is followed by a proviso that the board of appeals shall meet from time to time and whenever necessary to consider and act upon complaints and further to "revise the assessment of real property as may be just and necessary." The requirements of the oath and the affidavit and the additional duties imposed upon the board of appeals by the proviso forbid the limitation upon the powers of the board declared in the opinion of the majority.

The limitation of the power of the board of appeals to a revision of the assessment on the particular property described in the complaint fails for another reason. Section 1 of article 9 of the constitution requires every person and corporation to "pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; * * *". In case property of a certain class, including the parcel described in a complaint, is assessed at forty per cent of its fair cash value while all other taxable property in the county is assessed at thirty per cent of such value, the construction of section 34 declared by the majority of the court, denies the board of appeals the power to reduce the assessment on the particular class of property, other than the parcel concerning which the complaint is made. Such a reduction of the assessment on all

the property in that class would be necessary to equalize the assessment of all property throughout the county. The result of the announced construction of section 34 would be a discrimination against all property of the class excessively valued, except only the particular parcel reviewed, the owner of which, with respect to all other owners of property in the same class, would obtain an unwarranted advantage. To confine the reduction of the assessment in such a situation, solely to the property specifically described in the complaint, would constitute a violation of the constitutional provision requiring uniformity and, in consequence, would render the board of appeals powerless to grant the relief sought. Since individual preferential treatment is prohibited by the constitution, the declared construction of section 34 would deny the tax-payer, in the circumstances stated, a remedy before the board of appeals. The power of that board, on the other hand, to revise an assessment not only as it respects the particular parcel concerning which complaint is made, but also the class to which that parcel belongs, enables the board to make effective the constitutional requirement of uniformity.

The history of revenue legislation in this State shows that some board or body has been provided to revise the assessments made by the local assessor. The legislature has afforded the tax-payer an opportunity for a review by an independent agency of the assessment initially made. The relator concedes the necessity of such a review for he states that "to correct the county assessor's mistakes in making assessments and to protect the tax-payer from arbitrary and capricious assessments, some power to review the work of the assessor had to be provided" and that the "agency set up for that purpose in Cook county was the board of appeals." According to the contention of the relator and the opinion of the majority of the court, the power of the board of appeals, with respect to assessments upon real property, is limited to the revision and

correction of assessments against particular parcels described in complaints filed by individual tax-payers. The pertinent inquiry follows whether, by the exercise of the board's power so construed or limited, the tax-payers of Cook county may obtain relief from the erroneous, arbitrary and capricious assessments which the relator admits may be made by the county assessor.

The relator asserts that the assessment upon real estate in Cook county for the year 1931 embraced approximately 1,300,000 parcels of land and 800,000 buildings. The order of the board of appeals requiring the county assessor to make a reduction of fifteen per cent in the base prices employed in assessing cottages, bungalows, residences and two and three-flat buildings for the same year, the relator states, affected 408,959 buildings and required the re-computation of a like number of assessments. The reasons assigned by the board of appeals for making its order were that there was a lack of uniformity and equality between the assessment of the classes of property affected by the order and other classes of property and that the base prices fixed by the board's order were fair and just to the tax-payers. The State Tax Commission, it appears from the record, subsequently ordered the same reductions. The board of appeals is allowed a period not exceeding seventy working days each year to revise the assessment of property. If the corrections successively ordered by the board of appeals and the State Tax Commission could have been made only upon complaints, each of which concerned the assessment upon a specific parcel of real estate, the board would have been compelled to hear and determine nearly six thousand of such complaints each day. The performance of such a task by a single body within the period described is obviously impossible. In *People* v. *Cesar,* 349 Ill. 372, it appeared that 67,754 individual complaints charging excessive assessments upon parcels of real property for the year 1928 were filed and that upon 18,431 of these com-

plaints a hearing before the board of review was obtained. Against the assessment for the succeeding year 40,941 like complaints were filed and of this number only 2409 were heard. It cannot be assumed that substantially all these complaints were just, yet those without merit, whatever the number, could not properly be eliminated without attention; and if the tax-payers of Cook county must obtain relief against excessive, arbitrary and capricious assessments solely by means of individual complaints, the constitutional requirement of uniformity in taxation will be largely suspended and discriminations in assessments, increasing in number as time progresses, will be inevitable. Judicial decision should permit only the clearest statutory language to withhold from a reviewing body the power of revision. Experience has demonstrated that this power is vitally necessary even to approximate equality and uniformity in taxation.

Under section 1 of article 9 of the constitution, the courts, in the absence of fraud, have no power to review the valuation of property made by the proper officers for purposes of taxation. (*Bistor* v. *McDonough*, 348 Ill. 624; *Jeffery Building Corp.* v. *Harding*, 347 id. 336; *Kinderman* v. *Harding*, 345 id. 237; *Hettler Lumber Co.* v. *Cook County*, 336 id. 645; *Hulbert* v. *People*, 189 id. 114; *Burton Stock Car Co.* v. *Traeger*, 187 id. 9; *Keokuk Bridge Co.* v. *People*, 185 id. 276; *Republic Life Ins Co.* v. *Pollak*, 75 id. 292; *Spencer & Gardner* v. *People*, 68 id. 510). Against an excessive or unequal assessment, where the complaint is not fraud but an error of judgment merely, the sole remedy is an application for an abatement to such statutory agencies as have been provided for hearing the complaint. (*Jeffery Building Corp.* v. *Harding, supra; Kinderman* v. *Harding, supra; Hulbert* v. *People, supra; Hettler Lumber Co.* v. *Cook County, supra; Keokuk Bridge Co.* v. *People, supra; Buttenuth* v. *St. Louis Bridge Co.* 123 Ill. 535; *People* v. *Lots in Ashley*, 122 id. 297; *Humphreys*

v. *Nelson,* 115 id. 45). If, therefore, the board of appeals is to be largely shorn of the power of revision hitherto conferred upon and exercised by similar bodies in this State, a considerable number of tax-payers necessarily will be deprived of any remedy by or through which to obtain relief against unjust and unequal assessments.

The power to tax is essential to the maintenance of the State. Subject to constitutional limitations, the legislature, in the exercise of this power, may resort to such means or remedies as it chooses. (*Leigh* v. *Green,* 193 U. S. 79). This power, which reaches directly or indirectly to all classes of the people, is the most pervading of all the powers of government. (*Loan Ass'n* v. *Topeka,* 20 Wall. 655). The power to tax involves the power to destroy and the power to destroy may defeat and render useless the power to create. (*McCulloch* v. *Maryland,* 4 Wheat. 316). Revenue laws, which by their operation impose burdens upon the people, when doubtful or ambiguous, will be construed in favor of the tax-payer and against the taxing power. (*Gould* v. *Gould,* 245 U. S. 151; *Eidman* v. *Martinez,* 184 id. 578). The majority of the court, by the opinion filed, reverses the application of this salutary rule of statutory construction. The amended Revenue act, as construed by the opinion in this case, practically commits to a single public officer the assessment of property in a county of nearly four million inhabitants. Legislative authorization of such an unprecedented concentration of power in the taxing process may compel the citizen who shares the burden of maintaining the State and cannot otherwise be heard, to find the fundamental law the sole recourse for the protection of his rights.

It is stated in the opinion of the majority that the board of appeals entered the order of March 22, 1933, without notice to the county assessor. If such notice was omitted, the want of it was not urged by the relator as a ground defeating the board's jurisdiction to enter the

order. The board's power under the statute to require the reduction to be made, apart from any question of notice, was the sole issue presented.

The prayer of the petition for a writ of *mandamus,* in my opinion, should be denied.

Mr. Justice Stone: I concur in the foregoing dissent.