(No. 22144.— ▮▮▮▮▮▮)

THE PEOPLE *ex rel.* Joseph B. McDonough, County Collector, Appellee, *vs.* MARSHALL, FIELD & Co., Appellant.

*Opinion filed February 23, 1934—Rehearing denied April 6, 1934.*

634

WILSON & McILVAINE, (WILLIAM B. HALE, CALVIN F. SELFRIDGE, and SIDNEY K. JACKSON, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, ROBERT S. CUSHMAN, LOUIS H. GEIMAN, and JACOB SHAMBERG, of counsel,) for appellee.

WILLIAM H. SEXTON, Corporation Counsel, and WILLIAM L. SULLIVAN, for the city of Chicago, *amicus curiæ.*

Per CURIAM: Marshall Field & Co., a corporation, filed objections in the county court of Cook county to judgment and order of sale of its property known as the Merchandise Mart for the taxes of 1930. The objections were overruled and judgment was entered for the amount of the tax. The cause comes to this court by an appeal prosecuted by the objector, hereinafter referred to as appellant.

The real estate is situated in the city of Chicago on the north bank of the Chicago river. In March, 1929, appellant began the construction of a large building upon the premises for its wholesale business and for rental purposes. By April 1, 1930, the outer walls were completed, the roof was on and the windows and sashes were installed. From photographs in evidence it has the outward appearance of a completed building. One tenant moved into the building in April. Appellant moved in on May 5 and twenty-two tenants paid rent for the month of May. The board of assessors assessed the premises as unimproved property. The full value was fixed at $2,306,319 and the assessed value at $853,339. No assessment was made on the building. The board of review made no change in the assessed value of the land but added thereto the sum of $4,475,703 as the assessed value of the improvements, making the total assessment $5,329,042. The tax based upon this assessment was $305,572.29. Appellant paid

$55,501.62 as the amount due under the valuation fixed by the board of assessors and deposited the balance of the tax with the county treasurer. Judgment was entered for $321,117.76 for delinquent tax, penalties, interest and costs.

The proceedings before the board of review to increase the assessment were initiated by a complaint filed July 30, 1931, signed "City of Chicago, Wm. H. Sexton, corporation counsel; Wm. L. Sullivan, assistant corporation counsel." It alleged that "improvements on this property were erroneously omitted from assessment by board of assessors. Building was under roof and substantially completed April 1, 1930." It further stated that the full, fair cash market value of the building on such date was $21,993,629. That amount had been actually expended in the construction of the building.

One of appellant's objections to the tax is that the board of review was without jurisdiction to increase the assessment. The contentions presented are, that the city of Chicago had no power, under the law, to make the complaint; and further, that the corporation counsel and his assistant acted without authority from the city even if it did have power to complain.

The general rule is that cities may exercise only such powers as are expressly delegated or necessary incidents of such powers. It is insisted that this rule forecloses cities of any right to question assessments on private property because no such powers are given them by the statute. Section 35 of the Revenue act of 1898 (Smith's Stat. 1931, chap. 120, par. 314,) was in force at the date the complaint herein was filed, and the requisites of the complaint must be tested by the statutes then in force and not by those subsequently enacted. That section provides: "On complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct the same, as shall appear to be just." Under a similar provision of the Revenue act of 1872

the city of East St. Louis, through its mayor, filed a complaint with the board of review that the property of the St. Louis Bridge Company was assessed too low. The board increased the assessment and the tax-payer filed objections thereto in the county court of St. Clair county, where the objection to the increase was overruled. Upon appeal to this court (*St. Louis Bridge Co.* v. *People,* 128 Ill. 422,) we said: "It is also urged that the complaint as to the lowness of the assessment must be made to the board by a tax-payer, and that the city of East St. Louis, acting through its mayor, was not a tax-payer. We think the complaint was properly made by the city, as the latter was interested in the amount of the tax to be raised. Section 86 says that the assessment may be reviewed upon the application of 'any person who shall complain,' etc. Such application is not confined to tax-payers by the terms of the section." In the case at bar the city of Chicago had an interest in the assessment upon appellant's property, and under the provisions of the statute of 1898 we hold the city had a right to file the complaint. What we said in *People* v. *Nixon,* 353 Ill. 556, about the necessity of the complaint being filed by a tax-payer is based upon statutory enactments since 1931.

The original objections filed July 20, 1932, did not question the power of the city to make the complaint or the authority of the corporation counsel to act in behalf of the city. After the hearing in the county court on the merits, and after the court had entered an order overruling the objections, appellant filed additional objections, by which for the first time it urged that the city and its corporation counsel were not authorized to file the complaint. The objection was dilatory in its nature and should have been made at the first opportunity. *Mix* v. *People,* 116 Ill. 265.

Appellant also contends that the assessment was illegal because the complaint did not state the fair cash market

value of the real property, including the improvements; that there was no minute of the decision of the board of review, with reasons therefor, entered in any record of the proceedings; that no such notation was made on the complaint in the space provided for that purpose; that the assessor's card contains no definite corrections, with the reasons therefor, and that such omissions are in violation of the statute and the rules of the State Tax Commission. The complaint showed the assessed value of the land as fixed by the board of assessors and the fair cash market value of the improvements to be $21,993,629. On the reverse side the complaint showed the full value and the assessed value of the land as fixed by the board of assessors. In appropriate columns the full value and assessed value of the land as revised by the board of review were shown. The full value and the assessed value of the improvements, with a showing of the increase made by the board of review, appeared in appropriate columns. The assessor's card, under "Building appraisal," in the spaces provided for the purpose, showed the cubic contents of the building, the unit price and the new cost as $22,442,474 and the figures $21,993,624. It bore the same index number as the complaint. Section 191 of the Revenue act (Smith's Stat. 1931, par. 179,) provides that "no assessment of property * * * shall be considered illegal on account of any irregularity in the tax lists or assessment rolls, * * * and no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." None of the informalities complained of affect the substantial justice of the tax and are not sufficient to vitiate it. *People* v. *Hart,* 332 Ill. 467.

The next contention is that the assessment was fraudulent. To support that charge it is said that the resolution

of the city council was of general application, and that the corporation counsel and his assistant, in order to make a test case, singled out appellant's property because it was conspicuous; that there was a rule to omit uncompleted buildings from assessments; that the Merchandise Mart was not substantially completed on April 1, 1930, and that the board of review adhered to the rule as sound general practice but arbitrarily and fraudulently assessed appellant's property in violation thereof. It is well established that the burden is on the objector to show the invalidity of the tax. The presumptions are all in favor of the regularity and legality of the assessment. (*In re Maplewood Coal Co.* 213 Ill. 283; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 id. 33.) It has been the uniform rule in this State that neither the omission to assess nor the under-valuation of one kind or class of property will invalidate the assessment upon other property in the same jurisdiction. *Bistor* v. *McDonough,* 348 Ill. 624.

The board of review adopted an equalizing factor of thirty-seven per cent of the full value and applied it to the appraised value of all real estate in Cook county. At the first hearing before the board of review the architect testified that the shell of a building represents fifty-five per cent of the total cost. Applying these considerations to the $21,993,624 expended on the building prior to April 1, 1930, the assessed valuation would be $4,475,703, the sum fixed by the board of review. A building inspector of the city of Chicago testified that the building was ninety per cent completed on April 1, 1930. The board of assessors and the board of review did not, as a matter of practice, assess buildings in course of construction unless they were at least eighty-five per cent, or substantially, completed on April 1 of the taxing year. On April 1, 1929, there were approximately 676 uncompleted buildings in the city of Chicago. Because of the practice in omitting uncompleted buildings from taxation the city council adopted a resolution re-

questing the board of assessors and the board of review to assess such property. On April 1, 1930, there were about 800 uncompleted buildings in the city. The board of assessors issued certificates of error as to the assessment of 209 of them because not eighty-five per cent, or substantially, completed. The assistant corporation counsel inspected a large number of uncompleted buildings. Pictures were taken of about 80 or 100 that were under roof or occupied. When the assessors completed their assessment the record showed that some of the buildings had been assessed. In sixteen cases not assessed, including appellant's property, complaints were filed with the board of review. The city and its officers insisted that uncompleted buildings be assessed in conformity with the law and made extensive investigations to secure and present evidence of omissions to assess such property. Nevertheless the board of assessors refused to assess it. Upon complaint of the action of the board of assessors the board of review made the assessment here involved. The fact that some uncompleted property was not assessed is insufficient to show fraud.

It is urged that the building was not ready for occupancy on April 1, and, lacking utility, was not assessable. In *People* v. *City of St. Louis,* 291 Ill. 600, the city objected to an assessment on its bridge over the Mississippi river on the ground that the approaches to the lower deck of the bridge were not completed on April 1 and should not be included in the assessment. It was held that the lower deck of the bridge, whether or not now in use by railroad or interurban cars for transportation purposes, would be subject to the tax under the conditions shown by this record. In *Michigan-Grand Building Corp.* v. *Barrett,* 350 Ill. 291, the tax-payer sought to evade payment of taxes on a seventeen-story building under construction on the ground that it was not under roof on April 1 of the taxing year. It was alleged that it was the practice of the board of assessors to omit such uncompleted buildings

640

from assessment. We held that "during the year between April 1, 1928, and April 1, 1929, improvements were placed on appellant's property, and it, therefore, in 1929 became the duty of the board of assessors to determine the amount, in its opinion, of any change in the value by reason of the improvements thereon and add to the assessment accordingly."

Approximately $22,000,000 had been expended on appellant's building prior to April 1. It was occupied by twenty-two tenants within the ensuing sixty days. It can not be said that on April 1 the building was of no value or that it did not add to the market value of the land. The record conclusively shows that the improvement was assessable.

The objections to the assessment were correctly overruled, and the judgment of the county court is affirmed.

*Judgment affirmed.*